JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :     <u>INDICTMENT</u>

            - v. -                :     S2 07 Cr. 354

MONZER AL KASSAR,                 :
    a/k/a "Abu Munawar,"
    a/k/a "El Taous,"             :
TAREQ MOUSA AL GHAZI, and
LUIS FELIPE MORENO GODOY,         :

                Defendants.       :

- - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED MAY 2 9 2007
```

<u>COUNT ONE</u>

CONSPIRACY TO PROVIDE MATERIAL SUPPORT OR
<u>RESOURCES TO A FOREIGN TERRORIST ORGANIZATION</u>

        The Grand Jury charges:

<u>BACKGROUND TO THE CONSPIRACY</u>

<u>The Defendants</u>

        1.  Since in or about the early 1970s, MONZER AL

KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, has

been an international weapons trafficker.  During this time

period, KASSAR has been a source of weapons and military

equipment for armed factions engaged in violent conflicts around

the world.  Specifically, KASSAR has provided weapons and

military equipment to such factions in Nicaragua, Brazil, Cyprus,

Bosnia, Croatia, Somalia, Iran, and Iraq, among other countries.

Some of these factions have included known terrorist

organizations, such as the Palestinian Liberation Front ("PLF"),

the goals of which included attacks on United States interests

and United States nationals.

2.   To carry out his weapons-trafficking business, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, has developed an international network of criminal associates, front companies, and bank accounts in, among other countries, the United Kingdom, Spain, Lebanon, Syria, Iraq, Poland, Bulgaria, and Romania.  Additionally, KASSAR has engaged in money-laundering transactions in bank accounts throughout the world to disguise the illicit nature of his criminal proceeds.

3.   To provide cover for his illicit arms transactions, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, often obtained ostensibly legitimate end-user certificates from various countries, including the People's Democratic Republic of Yemen, and other fraudulent paperwork. The end-user certificates stated that a particular shipment of weapons was formally destined for a particular country.  KASSAR used the end-user certificates to make his weapons deals appear legitimate, but in fact illegally diverted the weapons to countries other than the ones identified in the end-user certificates.

4.   TAREQ MOUSA AL GHAZI, the defendant, has worked with MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, in his weapon-trafficking business for approximately the last 30 years.  During this time period, GHAZI's role has

included brokering weapons transactions for KASSAR and advising others on the logistics of purchasing weapons through KASSAR.

5.    LUIS FELIPE MORENO GODOY, the defendant, has worked with MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, in his weapons-trafficking business for approximately the last 10 years.  During this time period, MORENO's role has included managing financial matters for KASSAR, including arranging for various bank accounts to be used to conduct weapons transactions.

*Fuerzas Armadas*
*Revolucionarias de Colombia*

6.    From in or about 1964 until on or about the date of filing of this Indictment, the Fuerzas Armadas Revolucionarias de Colombia (hereinafter, the "FARC") has been and is an international terrorist group dedicated to the violent overthrow of the democratically elected Government of Colombia.  Since its inception, while continuing to engage in bombings, massacres, kidnappings, and other acts of violence within Colombia, the FARC also evolved into the world's largest supplier of cocaine.  In October 1997, the United States Secretary of State designated the FARC as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act.  The Secretary of State redesignated the FARC as a foreign terrorist organization on October 2, 2003, and October 11, 2005.  As of the date of filing of this Indictment, the FARC is currently designated as a foreign

3

terrorist organization.  The European Union also has designated the FARC as a terrorist organization.

7.  During at least the five years prior to the date of filing of this Indictment, the FARC has directed violent acts against United States persons and property interests in foreign jurisdictions, including, but not limited to, Colombia.  In order to protect its financial interests in the cocaine trade, the FARC leadership ordered its members to take counter measures against the Government of Colombia's cocaine fumigation campaign, including, among other actions:  attempting to shoot down fumigation aircraft; forcing members and supporters to publicly rally against fumigation; and attacking Colombian infrastructure. Having recognized that the United States contributed significantly to Colombian fumigation efforts, the FARC leadership ordered FARC members to kidnap and murder United States citizens and to attack United States interests in order to dissuade the United States from continuing its efforts to fumigate and disrupt the FARC's cocaine and cocaine paste manufacturing and distribution activities.

8.  The FARC's violent acts directed against the United States and United States interests have included: (1) the murder of United States nationals; (2) the kidnapping of United States nationals, and (3) the bombing of a restaurant in Bogota, Colombia, frequented by United States nationals.

4

## THE CONSPIRACY TO PROVIDE MATERIAL SUPPORT OR
## RESOURCES TO A FOREIGN TERRORIST ORGANIZATION

9.   From at least in or about February 2006, up to and
including in or about May 2007, in an offense that occurred in
and affected interstate and foreign commerce, MONZER AL KASSAR,
a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MOUSA AL GHAZI, and
LUIS FELIPE MORENO GODOY, the defendants, at least one of whom
was first brought to and arrested in the Southern District of New
York, and others known and unknown, unlawfully and knowingly did
combine, conspire, confederate and agree together and with each
other to provide "material support or resources," as that term is
defined in Title 18, United States Code, Section 2339A(b), to a
foreign terrorist organization, to wit, the FARC, which was
designated by the United States Secretary of State as a foreign
terrorist organization in October 1997, pursuant to Section 219
of the Immigration and Nationality Act, was redesignated as such
on October 2, 2003, and October 11, 2005, and is currently
designated as such, as of the date of filing of this Indictment.

10.   It was a part and an object of the conspiracy that
MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ
MOUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and
others known and unknown, agreed to provide the FARC with
millions of dollars worth of weapons for the FARC to use to
protect their cocaine trafficking business and to attack United
States interests in Colombia, knowing that the FARC had engaged

and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that the FARC had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B.

Overt Acts

11.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed, in the Southern District of New York and elsewhere:

a.   On or about February 6, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and TAREQ MOUSA AL GHAZI, the defendants, met with two confidential sources working with the United States Drug Enforcement Administration (the "DEA") at MONZER AL KASSAR's residence in Marbella, Spain, and discussed the sale of millions of dollars worth of weapons to the FARC.  (The confidential sources will, hereinafter, be referred to as "CS-1" and "CS-2," or, collectively, as "CSs").  A photograph of MONZER AL KASSAR's residence is attached hereto.

b.   On or about February 6, 2007, the CSs told MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and TAREQ MOUSA AL GHAZI, the defendants, that they represented the

FARC, and that the FARC needed weapons to fight against the
United States in Colombia.

c. On or about February 6, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant,
told the CSs that his fight was also with the United States, and
agreed to sell weapons to the FARC.

d. On or about February 6, 2007, the CSs provided
MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and
TAREQ MOUSA AL GHAZI, the defendants, with lists of the following
weapons that the FARC wanted to purchase: (1) 4,350 AKM assault
rifles; (2) 3,350 AKMS assault rifles; (3) 200 RPK assault
rifles; (4) 50 Dragunov sniper rifles; (5) 500 Makarov pistols;
(6) 2,000,000 rounds of 7.62mm x 39mm ammunition; (7) 120 RPG
grenade launchers; (8) 1,650 PG-7V grenade rounds; and (9) 2,400
RGO-78 hand grenades.

e. On or about February 6, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant,
spoke over the telephone with an unidentified co-conspirator who
is a boat captain ("CC-1"), and asked CC-1 to assist in
transporting weapons for the CSs.

f. On or about February 6, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant,
spoke over the telephone with another unidentified co-conspirator

("CC-2"), and told CC-2 to contact people in Romania and
Yugoslavia to obtain prices for the weapons requested by the CSs.

g.   On or about February 6, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant,
informed the CSs that the weapons they requested for the FARC
would cost approximately €6,000,000 to €8,000,000.

h.   On or about February 6, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant,
offered to send 1,000 men to the CSs to fight with the FARC
against United States military officers in Colombia, and also
offered to supply the CSs with C4 explosives, detonators, and
experts to train the FARC to use them against these United States
armed forces.

I.   On or about February 7, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant,
provided the CSs with details on the cost of each type of weapon
they had requested.

j.   On or about February 7, 2007, MONZER AL
KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and TAREQ MOUSA AL
GHAZI, the defendants, received from the CSs an original end user
certificate from Nicaragua related to the weapons transaction.

k.   On or about February 7, 2007, in Marbella,
Spain, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous,"
the defendant, provided the CSs with a telephone number and a fax

8

number to use to contact him regarding the weapons transaction, and LUIS FELIPE MORENO GODOY, the defendant, provided the CSs with an email address to use regarding the weapons transaction.

l.  On or about February 13, 2007, CS-1 sent another original Nicaraguan end user certificate via DHL courier to MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, in Spain, in connection with the weapons transaction. A copy of this Nicaraguan end user certificate is attached hereto.

m.  On or about February 25, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, received a fax at the number he provided to the CSs described above, that was sent by CS-1 asking KASSAR if the Dragunov sniper rifles were manufactured in Russia or Romania, and requesting prices for C4 explosives.

n.  On or about March 2, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, confirmed to CS-1 via telephone that the Dragunov sniper rifles were manufactured in Russia, and that KASSAR could supply CS-1 with ton-quantities of C4 explosives.

o.  On or about March 27, 2007, TAREQ MOUSA AL GHAZI, the defendant, advised the CSs on how to negotiate with MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, for the purchase of weapons.

p.  On or about March 27, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MOUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, met with the CSs at KASSAR's residence in Marbella, Spain, to discuss the sale of weapons to the FARC.

q.  On or about March 27, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, cautioned CS-1 about speaking over the telephone concerning the weapons transaction.

r.  On or about March 27, 2007, in the presence of MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, TAREQ MOUSA AL GHAZI, the defendant, received approximately €4,000 Euros from the CSs for his assistance in arranging the weapons transaction with KASSAR.

s.  On or about March 27, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, in the presence of TAREQ MOUSA AL GHAZI and LUIS FELIPE MORENO GODOY, the defendants, agreed to provide prices to the CSs for surface-to-air missile systems for the FARC to use to attack United States helicopters in Colombia.

t.  On or about March 27, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, told CS-1 that certain of the weapons he agreed to sell to the FARC would

10

be good for attacking United States military helicopters in Colombia.

u.  On or about March 27, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, provided the CSs with information for a bank account in Spain (the "Spain Account") to receive €100,000 from the CSs to secure the services of CC-1 to transport the weapons to the FARC.

v.  On or about March 27, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MOUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and the CSs discussed the fact that the FARC financed its terrorist activities with proceeds from its cocaine trafficking business, and also discussed the FARC's need to attack United States interests and to kill United States nationals in Colombia.

w.  On or about March 27, 2007, LUIS FELIPE MORENO GODOY, the defendant, transported the CSs to an Internet café to permit the CSs to transfer €100,000 from the United States, through Denmark, to the Spain Account to secure CC-1's transportation services for the weapons.

x.  On or about March 28, 2007, in Marbella, Spain, CS-1 asked TAREQ MOUSA AL GHAZI, the defendant, how many Americans he had killed, and GHAZI replied that he was unsure because he just gave the orders.

11

y.  On or about March 28, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, received €100,000 from the CSs in the Spain Account to secure the transportation services of CC-1.

z.  On or about March 28, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, in the presence of TAREQ MOUSA AL GHAZI and LUIS FELIPE MORENO GODOY, the defendants, provided the CSs with a document describing the boat that KASSAR intended to use to transport the weapons to the FARC.  A copy of the document describing the boat is attached hereto.

aa.  On or about March 28, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, in the presence of TAREQ MOUSA AL GHAZI and LUIS FELIPE MORENO GODOY, the defendants, provided the CSs with a specification sheet for a surface-to-air missile system that KASSAR agreed to obtain for the CSs.  A copy of the specification sheet is attached hereto.

bb.  On or about March 28, 2007, MONZER AL KASSAR, a/k/a "Abu Munwar," a/k/a "El Taous," the defendant, agreed to provide experts to train the FARC to use explosives, and determined possible flight arrangements for these experts to travel on Iberian Airlines from Spain to Guatemala en route to Colombia.

cc.  On or about March 28, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MOUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, agreed to meet with the CSs and CC-1 in Spain to discuss the transportation of the weapons.

dd.  On or about March 28, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, provided the CSs with information for a bank account in Lebanon (the "Lebanon Account") to receive additional monies for the weapons transaction.

ee.  On or about April 5, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, received an email that had been drafted by CS-1 that asked KASSAR and MORENO, among other things, to obtain 15 of the surface-to-air missile systems KASSAR had previously shown to the CSs to help with problems the FARC was having with the Americans in Colombia.

ff.  On or about April 5, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, called CS-1 over the telephone, and, after telling CS-1 never to use his name in anything, agreed to provide CS-1 with the surface-to-air missile systems CS-1 had requested.

gg.  On or about April 18, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, spoke with

CS-1 over the telephone and arranged for CS-1 and CS-1's representative to meet KASSAR and CC-1 in the near future to discuss the logistics of transporting the weapons.

hh.  On or about May 2, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, CC-1, and an associate of CC-1 ("CC-3") met with CS-1 near Malaga, Spain, and discussed the logistics of transporting the weapons.

ii.  On or about May 2, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, CC-1 and CC-3 received $135,000, which had been wire transferred into the Spain Account from a bank account in New York, New York, as payment for the transportation services of CC-1 and CC-3.

jj.  On or about May 2, 2007, CC-1 and CC-3 told CS-1 that the boat that would be used to transport the weapons to the FARC would travel to Romania from Greece.

kk.  On or about May 2, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, provided CS-1 with another bank account in Spain (the "Second Spain Account") to be used by CS-1 to wire transfer additional money from New York, New York, in furtherance of the weapons deal.

ll.  On or about May 2, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, requested that CS-1 list surface-to-air missile systems on a new end user certificate as part of the weapons deal.

mm.  On or about May 9, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," and LUIS FELIPE MORENO GODOY, the defendants, received $50,000, which had been wire transferred into the Second Spain Account from a bank account in New York, New York, in furtherance of the weapons deal.

nn.  On or about May 2, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, invited CS-1 to travel to Bulgaria and Romania where the weapons were being manufactured.

oo.  On or about May 9, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, informed CS-1 over the telephone that he was in Bulgaria in connection with the weapons deal, and that he had received the $50,000 that had been wire transferred from New York, New York.

pp.  On or about May 13, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, and CS-1 discussed the fact that CS-1 was having difficulty obtaining an end-user certificate to include the surface-to-air missile systems and additional weapons.  KASSAR told CS-1 that he could obtain an end-user certificate to cover that part of the weapons

15

transaction, and that he would charge CS-1 fifteen to twenty percent of the price of the weapons for this service.

qq.  On or about May 19, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, and CS-1 discussed the fact that CS-1 was in the process of getting access to €3,500,000 in Romania and would use that money as partial payment for the weapons.

rr.  On or about May 19, 2007, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," the defendant, and CS-1 agreed to meet in Romania as soon as CS-1 had access to the €3,500,000 for the weapons.

(Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(E)) and 3238).

COUNT TWO

CONSPIRACY TO KILL UNITED STATES NATIONALS

The Grand Jury further charges:

12.  The allegations set forth in Paragraphs One and Two above are incorporated by reference as if set forth fully herein.

13.  From at least in or about February 2006, up to and including in or about May 2007, in an offense begun and committed outside of the jurisdiction of any particular State or a district of the United States, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, at least one of whom was first

16

brought to and arrested in the Southern District of New York, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other to kill nationals of the United States, in violation of Title 18, United States Code, Section 2332(b).

14.   It was a part and an object of the conspiracy that MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and others known and unknown, agreed to provide the FARC with millions of dollars worth of weapons to be used, among other things, to kill nationals of the United States in Colombia.

<u>Overt Acts</u>

15.   In furtherance of the conspiracy and to effect the illegal object thereof, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and others known and unknown, committed the overt acts set forth in Count One of this Indictment, which are fully incorporated by reference herein.

(Title 18, United States Code, Section 2332(b) and 3238.)

COUNT THREE

CONSPIRACY TO KILL OFFICERS AND EMPLOYEES OF THE UNITED STATES

The Grand Jury further charges:

16.   The allegations set forth in Paragraphs One and Two above are incorporated by reference as if set forth fully herein.

17.   From at least in or about February 2006, up to and including in or about May 2007, in an offense begun and committed outside of the jurisdiction of any particular State or a district of the United States, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, at least one of whom was first brought to and arrested in the Southern District of New York, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other to kill officers and employees of the United States, while such officers and employees were engaged in or on account of the performance of official duties, and any person assisting such officers and employees in the performance of such duties and on account of that assistance, in violation of Title 18, United States Code, Section 1114.

18.   It was a part and an object of the conspiracy that MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and

others known and unknown, agreed to provide the FARC with millions of dollars worth of weapons to be used, among other things, to kill officers and employees of the United States, and persons assisting such officers and employees in the performance of official duties, in Colombia.

### Overt Acts

19.    In furtherance of the conspiracy and to effect the illegal object thereof, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and others known and unknown, committed the overt acts set forth in Count One of this Indictment, which are fully incorporated by reference herein.

(Title 18, United States Code, Sections 1114, 1117, and 3238.)

### COUNT FOUR

### CONSPIRACY TO ACQUIRE AND USE ANTI-AIRCRAFT MISSILES

The Grand Jury further charges:

20.    The allegations set forth in Paragraphs One and Two above are incorporated by reference as if set forth fully herein.

21.    From at least in or about February 2006, up to and including in or about May 2007, in an offense begun and committed outside of the jurisdiction of any particular State or a district of the United States, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO

GODOY, the defendants, at least one of whom was first brought to and arrested in the Southern District of New York, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate and agree together and with each other to produce, construct, otherwise acquire, transfer directly and indirectly, receive, possess, import, and use (1) an explosive and incendiary rocket and missile that is guided by a system designed to enable the rocket and missile to seek and proceed toward energy radiated and reflected from an aircraft and toward an image locating an aircraft, and otherwise direct and guide the rocket and missile to an aircraft; (2) a device designed and intended to launch and guide said rocket and missile; and (3) a part and combination of parts designed and redesigned for use in assembling and fabricating said rocket, missile, and device.

22.    It was a part and an object of the conspiracy that MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, and others known and unknown, agreed to acquire and export surface-to-air missile systems to enable the FARC to attack United States helicopters in Colombia, in violation of Title 18, United States Code, Section 2332g.

<u>Overt Acts</u>

23.    In furtherance of the conspiracy and to effect the illegal object thereof, MONZER AL KASSAR, a/k/a "Abu Munawar,"

20

a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO

GODOY, the defendants, and others known and unknown, committed

the overt acts set forth in Count One of this Indictment, which

are fully incorporated by reference herein.

(Title 18, United States Code,
Sections 2332g(a)(1), (b)(4), and 3238.)

COUNT FIVE

MONEY LAUNDERING

The Grand Jury further charges:

24.   The allegations set forth in Paragraphs One and

Two of this Indictment are hereby realleged and incorporated as

if set forth fully herein.

25.   From in or about February 2007, up to and

including in or about May 2007, in the Southern District of New

York and elsewhere, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a

"El Taous," and LUIS FELIPE MORENO GODOY, the defendants,

unlawfully, willfully, knowingly, and with the intent to promote

the carrying on of specified unlawful activity and to conceal and

disguise the nature, location, source, ownership, and control of

property believed to be the proceeds of specified unlawful

activity, did conduct and attempt to conduct a financial

transaction involving property represented to be the proceeds of

specified unlawful activity, to wit, KASSAR and MORENO received

funds transferred from New York, New York, to Spain that were

represented to be the proceeds of narcotics trafficking for the

purpose of financing the sale of millions of dollars worth of weapons to the FARC.

(Title 18, United States Code, Section 1956(a)(3).)

### FORFEITURE ALLEGATIONS

26.   The allegations contained in Counts One, Two, Three, and Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(G), and Title 28, United States Code, Section 2461(c).

27.   The violations of Title 18, United States Code, Sections 2339B, 2332(b), 1114, and 2332g, alleged in Counts One, Two, Three, and Four of this Indictment were Federal crimes of terrorism, as defined in 18 U.S.C. § 2332b(g)(5), against the United States, citizens and residents of the United States, and their property.

28.   MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, were individuals engaged in planning and perpetrating a Federal crime of terrorism against the United States, citizens and residents of the United States, and their property.

29.   Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 2339B,

22

2332b, 1114, and 2332g, alleged in Counts One, Two, Three, and Four of this Indictment, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPE MORENO GODOY, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(G)(I), and Title 28, United States Code, Section 2461(c), all right, title, and interest in all assets, foreign and domestic, derived from, involved in, and used and intended to be used to commit a Federal crime of terrorism against the United States, citizens and residents of the United States, and their property.  The assets to be forfeited pursuant to this paragraph include, but are not limited to, the following:

a.  An estate located at Palacio Mifadil, Atalaya de Rio Verde, 4 Marbella, Spain;

b.  All funds on deposit in bank account number 3058 0844 03 2761 001546, in the name of Senor Bilal Hussain, at Banco Caja Mar, Avda. Ricardo Soriano 25, 29600 Marbellla (Malaga), España, IBAN ES 84 3058 0844 03276100 1546, with SWIFT Code CCRIES2A;

c.  All funds on deposit in bank account number 3058 0844 03 2799 000409, in the name of Senor Bilal Hussain, at Banco Caja Mar, Avda. Ricardo Soriano 25, 29600 Marbellla (Malaga), España, IBAN ES 84 3058 0844 03276100 1546, with SWIFT Code CCRIES2A; and

d.  All funds on deposit in bank account number 390208, in the name of Mr. Bilal K. Hussain, at the Bank of Beirut S.A.L., Chtoura Branch, Lebanon, with SWIFT Code BABELBBE.

30.  Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 2339B, 2332(b), 1114, and 2332g, alleged in Counts One, Two, Three, and Four of this Indictment, MONZER AL KASSAR, a/k/a "Abu Munawar," a/k/a "El Taous," TAREQ MUSA AL GHAZI, and LUIS FELIPPE MORENO GODOY, the defendants, shall pay to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(G), and Title 28, United States Code, Section 2461(c), and a money judgment equal to the value of the assets subject to forfeiture under Paragraphs 20 through 23 above.

(Title 18, United States Code, Section 981(a)(1)(G) and Title 28, United States Code, Section 2461(c).)


_____          _____
FOREPERSON                                MICHAEL J. GARCIA
                                          United States Attorney

24





# POLICÍA NACIONAL
### MINISTERIO DE GOBERNACION

## CERTIFICADO DE DESTINO FINAL No. 0010-2006

El Suscrito Jefe de la Dirección de Registro y Control de Armas de Fuego, Municiones, Explosivos y Materiales Relacionados (DAEM), de conformidad con las facultades conferidas en el arto. 5, numeral 18 de la Ley No. 510, Ley Especial para el Control y Regulación de Armas de Fuego, Municiones, Explosivos y Otros Materiales Relacionados, Publicada en La Gaceta Diario Oficial No. 40 del 25 de Febrero del año 2005.

## CERTIFICA

Que el material que adelante se especifica tiene como destino final los Almacenes de LA POLICIA NACIONAL DE LA REPUBLICA DE NICARAGUA, ubicados en la Ciudad de Managua, Nicaragua, y el uso será exclusivo de esa entidad. Ese material, no será objeto de posterior re-exportación a otros países, ni traspaso a terceros.

| NO. | CANTIDAD/COMPRA | DESCRIPCIÒN |
|---|---|---|
| 01 | 2,000 Unidades | Fusiles AKM |
| 02 | 2,250 Unidades | Fusiles AKMS |
| 03 | 200 Unidades | Fusiles RPK |
| 04 | 50 Unidades | Fusiles DRAGUNOV |
| 05 | 500 Unidades | Pistolas MAKAROV PM |

El presente Certificado se expide a solicitud de la División de Administración General de la Policía Nacional de la República de Nicaragua, para el efecto exclusivo mencionado y tiene un plazo de validez de ciento veinte días, contados desde la fecha de su expedición.

Y para que conste a los efectos oportunos, se firma en la Ciudad de Managua a los 31 días del mes de enero del año dos mil siete.

Comisionado Mayor
**JAVIER DAVILA RUEDA**
**JEFE DAEM**

**"Mejorando nuestra actitud, construyamos Municipios más seguros"**



## *GENERAL INFORMATION*

FLAG 
Port of REGISTRY
No OF REGISTRY
IMO No
CALL SIGN
CLASS NOTATION                MACH
CLASS                          Bureau Veritas
INMARSAT C TLX No
INMARSAT C TLX No
BUILT                          1996 Malaysia
P&I                            INTERCOASTAL.
L.O.A.                         84.30 M
L.B.P.                         77.35 M
BREADTH MOULDED                16.00 M
DEPTH MOULDED                  6.80M
DRAFT (max)                    5.495 M ON FULL CARGO
GRT                            2.528
NRT                            1.498
DWT                            4.058 TNS
SERVICE SPEED                  11 KNOTS
MAIN ENGINE                    YANMAR M220-
                               EN/XY 1100 X 2 NOS
MAIN ENGINE (Output)           1200 PS x 800 RPM
PROPELLERS                     X 2

## HOLD CAPACITY (2 HOLDS / 2 HATCHES)

CARGO CAPACITY:
CARGO HOLD: *GRAIN*                    *BALE*
HOLD 1          :
HOLD 2          :
TOTAL    :    5491m³/193912ft³   5100m3/180104ft³

Containers Capacity: 124 TEUS

Derricks Capacity:  Plimsol Deck / Hydrowinch
                     2 x 40 MTS (SWL)

Hold 1 Dimension: (L/W/H) 28.90 / 12.20 m / 7.10
Hold 2 Dimension: (L/W/H) 28.70 / 14.00 m / 7.10

Hatch 1 Dimension: (L/W/H) 19.20 / 9.95 m
Hatch 2 Dimension: (L/W/H) 19.00 / 10.20m

Technical description

Strella – 2 M  man – portable anti – aircraft missile.


Strella – 2 M is an extensively deployed man-portable infra
red homing  light anti-aircraft missile. It relies upon a
tail pursuit interception to engage low flying aircraft
targets and has proved especially effective against helicopt

S P E C I F I C A T I O N
=================================

for the latest modified version of "STRELA-2M"
of rocket


1. Standard caliber              –    72 mm
2. Launcher lenght               –   1500 mm
3. Launcher weight               –    3 kos
4. Weight of starting mechanism  –    1,95 kos
5. Rocket lenght                 –   1440 mm
6. Rocket weight                 –    9,8 kos
7. Kind of fuel                  – solid fuel
8. Guiding system                – one channel, self guiding
                                   infrared
9. Homing head                   – thermic, tracking, passive,
10. Range                        – up to 4.200 meters
11. Packing:

        a/ two Rocket with launcher tube: 1 case dim.
           1600 x 400 x 350 mm, weight 58 kos,

        b/ starting mechanism: one case dim. 430 x 240 x 160 mm,
           weight: 7 kos.


CG
JA  3-29-07

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v -

**MONZER AL KASSAR,**
**TAREQ MOUSA AL GHAZI,**
**LUIS FELIPE MORENO GODOY,**

Defendants.

## INDICTMENT

S2 07 Cr. 254

18 U.S.C. §§ 2339B, 2332(b), 1114, 2332g,
1956(a)(3)

MICHAEL J. GARCIA
United States Attorney.

_Foreperson_

Per ad 11/15.7 indictment filed
Also filed

Peck, MJ.