S3 07 Cr. 354 (JSR)

# United States District Court
# Southern District of New York

---

**UNITED STATES OF AMERICA**

-against-

**MONZER AL KASSAR,**
a/k/a "Abu Munawar,"
a/k/a "El Taous,"
**TAREQ MOUSA AL GHAZI,** and
**LUIS FELIPE MORENO GODOY**

Defendants

---

## MEMORANDUM OF LAW

---

**GALLET DREYER & BERKEY, LLP**
*Attorneys for Luis Felipe Moreno Godoy*
845 Third Avenue, 8th Floor
New York, NY 10017
(212) 935-3131

{00155055.DOC;1}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

POINT ONE

    COUNT ONE MUST BE DISMISSED FOR THE FAILURE
    TO ALLEGE SUFFICIENT FACTS TO SUPPORT THE CHARGE .............................. 2

POINT TWO

    COUNT TWO MUST BE DISMISSED BECAUSE NEITHER THE
    STATUTE, CONGRESSIONAL INTENT, NOR DUE PROCESS
    ALLOWS FOR EXTRATERRITORIAL JURISDICTION OVER
    CRIMINAL ACTS WHICH OCCURRED OUTSIDE
    THE UNITED STATES ................................................................................................... 5

POINT THREE

    COUNT THREE MUST BE DISMISSED FOR FACIAL
    INSUFFICIENCY BECAUSE THE FACTUAL ALLEGATIONS
    FIT WITHIN THE "EXCLUDED CONDUCT" PROVISION OF
    THE STATUTE ............................................................................................................. 11

POINT FOUR

    COUNT FOUR VIOLATES THE DUE PROCESS CLAUSE OF
    THE FIFTH AMENDMENT BECAUSE IT FAILS TO ALLEGE
    THE SPECIFIC INTENT TO FURTHER THE ILLEGAL
    ACTIVITIES OF THE FOREIGN TERRORIST ORGANIZATION .............................. 15

POINT FIVE

    THE GOVERNMENT MUST DISCLOSE ITS PREDISPOSITION
    EVIDENCE UNDER THE SAME CONDITIONS AS IT
    DISCLOSES RULE 404(B) EVIDENCE OF OTHER CRIMES,
    WRONGS, OR ACTS ................................................................................................... 22

POINT SIX

    DEFENDANT LUIS FELIPE MORENO GODOY SHOULD BE PERMITTEDTO JOIN
    IN THE MOTIONS FILED BY CO-DEFENDANT,
    TAREQ MOUSA AL GHAZI ....................................................................................... 25

CONCLUSION................................................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

Baggett v. Bullitt, 377 U.S. 360, 373 (1964) ............................................................................. 16

Braverman v. United States, 317 U.S. 49, 53 (1942) .................................................................. 3

E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244, 248 (1991) ............................................. 6

Elfbrandt v. Russell, 384 U.S. 11, 17 (1966) ............................................................................. 19

Foley Brothers v. Filardo, 336 U.S. 281, 285 (1949) .............................................................. 5, 6

Hamling v.United States, 418 U.S. 87, 117 (1974) ..................................................................... 3

Humanitarian Law Project v. Department of Justice, 352 F.3d 382, 295-96, 400 (9th Cir. 2003) ................................................................................................................................................ 16, 17

Humanitarian Law Project v. Department of Justice, 393 F.3d 902, 902 (9th Cir. 2004) ............ 17

Jacobson v. United States, 503 U.S. 540, 548-49 (1992) .................................................... 22, 23

Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155, 173 (1993) ...................................................... 6

Scales v. United States, 367 U.S. 203, 224-25, 229, 227 n. 18 (1961) ............................. 15, 16, 19

Small v. United States, 544 U.S. 385, 388-89 (2005) ................................................................... 5

Strauss v. Credit Lyonnais, 2006 WL 2862704 (E.D.N.Y. 2006) ............................................... 18

United States v. Abdi, 498 F.Supp.2d 1048, 1060-61(S.D. Ohio 2007) ...................................... 18

United States v. Al-Arian, 329 F.Supp.2d 1294, 1300 (M.D. Fla. 2004) ........................ 18, 19, 20

United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998) ................................................................ 2

United States v. Aluminum Co. of America, 148 F.2d 416, 443 (2d Cir. 1945) (Hand, J.) ........... 6

United States v. Archer, 486 F.2d 670, 681 (2d Cir. 1973) (Friendly, J.) ................................... 10

United States v. Aref, 2007 WL 603508 (N.D.N.Y. 2007) ........................................................... 18

United States v. Assi, 414 F.Supp.2d 707, 720-21 (E.D. Mich. 2006) .................................... 19, 20

United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000) .................................................................. 23

United States v. Benitez, 741 F.2d 1312 (11th Cir. 1984), cert denied 471 U.S. 1137 (1985) ...... 8

United States v. Bin Laden, 92 F.Supp.2d 189, 202 (S.D.N.Y. 2000) ...................................... 7, 8

United States v. Black, 2007 WL 683996 (S.D.N.Y. 2007) (Cote, J.) ........................................... 2

United States v. Bowman, 260 U.S. 94, 97-98 (1922) ............................................................... 6, 7

United States v. Brand, 467 F.3d 179, 189 (2d Cir. 2006), cert denied ___ U.S. ___ (2007) ...... 23

United States v. Broce, 488 U.S. 563, 570 (1989) .......................................................................... 2

United States v. Brunshtein, 344 F.3d 91, 101-02 (2d Cir. 2003), cert denied 543 U.S. 823 (2004)
................................................................................................................................................... 23

United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990), cert denied 498 U.S. 1047 (1991) 9

United States v. Flores, 289 U.S. 137, 155 (1933) ......................................................................... 5

United States v. Gagliardi, 506 F.3d 140, 149 (2d Cir. 2007) ..................................................... 23

United States v. Gatlin, 216 F.3d 207, 211-12 (2d Cir. 2000) .................................................... 6, 8

United States v. Gaviria, 740 F.2d 174, 183 (2d Cir. 1984) .......................................................... 3

United States v. Harris, 65 F.Supp.2d 983, 987 (N.D. Iowa 1999) ............................................. 24

United States v. Harris, 733 F.2d 994, 1006 (2d Cir. 1984) ........................................................ 23

United States v. Higham, 98 F.3d 285, 292 (7th Cir. 1996) ........................................................ 23

United States v. Jones, 455 F.3d 134, 146 (2d Cir. 2006), cert denied ___ US ___ (2007) ........... 3

United States v. Kim, 246 F.3d 186, 188-89 (2d Cir. 2001) .......................................................... 6

United States v. Lakhani, 480 F.3d 171 (3d Cir. 2007) .................................................. 14

United States v. LaSpina, 299 F.3d 165, 177(2d Cir. 2002) ...................................... 2, 3

United States v. Marzook, 383 F.Supp.2d 1056, 1067-68, 1070 (N.D. Ill. 2005) ................. 19, 20

United States v. Mayo, 705 F.2d 62, 67 (2d Cir. 1983) ............................................. 22

United States v. Paracha, 2006 WL 12768 (S.D.N.Y. 2006) (Stein, J.) ................................ 18, 20

United States v. Pirro, 212 F.3d 86, 91-92 (2d Cir. 2000) ............................................. 3

United States v. Robel, 389 U.S. 258, 266 (1967) ....................................................... 19

United States v. Rubin, 844 F.2d 979, 983-84 (2d Cir. 1988) ......................................... 3

United States v. Sabir, 2007 WL 1373184 (S.D.N.Y. 2007) (Preska, J.) .................................... 18

United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995), cert denied sub nom Di Girolamo v. United States, 516 U.S. 1063 (1996) ................................................................. 23

United States v. Solomonyan, 451 F.Supp.2d 626, 646 (S.D.N.Y. 2006) ................................... 24

United States v. Soto, 716 F.2d 989, 993 (2d Cir. 1983) ................................................ 3

United States v. Stevens, 83 F.3d 60, 68 (2d Cir.), cert. denied 519 U.S. 902 (1996) ................. 23

United States v. Tutino, 883 F.2d 1125, 1138 (2d Cir. 1989), cert denied 493 U.S. 1081 (1990) and cert denied sub nom Guarina v. United States, 493 U.S. 1082 (1990) .................................. 24

United States v. Vega, 309 F.Supp.2d 609, 617 (S.D. N.Y. 2006) ...................................... 24

United States v. Warsame, ___ F.Supp.2d ___, 2008 WL 681344 (D. Minn. 2008) ................... 18

United States v. Yousef, 327 F.3d 56, 86, 111 (2d Cir. 2003), cert denied 540 U.S. 933 (2003) and cert denied sub nom Ismoil v. United States, 540 U.S. 933 (2003) .................................... 6, 9

**Statutes**

18 U.S.C. § 1111 ............................................................................................ 7

18 U.S.C. § 1112 ............................................................................................ 7

18 U.S.C. § 1113 ............................................................................................ 7

18 U.S.C. § 1114 .................................................................................... 5, 7, 8

18 U.S.C. § 1956 .......................................................................................... 13

18 U.S.C. § 2243(a) ....................................................................................... 8

18 U.S.C. § 2332(b) ................................................................................ 2, 4, 5

18 U.S.C. § 2332g ........................................................................................ 11

18 U.S.C. § 2339A ....................................................................................... 14

18 U.S.C. § 2339B .............................................................................. 15, 17, 20

18 U.S.C. § 7 .................................................................................................. 8

18 U.S.C. § 1119 ............................................................................................ 7

18 U.S.C. § 2339B(a)(1) (West 2004) ........................................................ 16

22 U.S.C. § 2778 .......................................................................................... 14

**Rules**

F.R.E. 404(b) ................................................................................ 1, 22, 23, 24

Federal Rules of Criminal Procedure 12(b)(3)(B) ........................................ 2

Federal Rules of Criminal Procedure 7(c)(1) ............................................... 2

**Constitution**

U.S. Const., Amend V ...................................................... 1, 2, 9, 10, 15, 16, 20

**Law Review Articles**

{00155055.DOC;1}V

Lee Brilmayer and Charles Norchi, "Federal Extraterritoriality and Fifth Amendment Due Process," 105 Harv. L. Rev. 1217 (1992) ................................................................................... 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

              -against-                            S3 07 Cr. 354 (JSR)

MONZER AL KASSAR,
        a/k/a "Abu Munawar,"
        a/k/a "El Taous,"
TAREQ MOUSA AL GHAZI, and
LUIS FELIPE MORENO GODOY,
            Defendants.
-----------------------------------------------------X

## MEMORANDUM OF LAW

       This memorandum of law is submitted in support of the instant application, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, seeking: 1) dismissal of Count One for facial insufficiency; 2) dismissal of Count Two for lack of jurisdiction; 3) dismissal of Count Three for facial insufficiency; 4) dismissal of Count Four because the statute violates the Due Process Clause of the Fifth Amendment; 5) an order compelling the Government to disclose pre-disposition evidence under the same terms as required under Rule 404(b); 6) permission to join motions filed on behalf of the co-defendant; and 7) such other, further and different relief as this Court deems just and proper.

{00155055.DOC;1}

**POINT ONE**

**COUNT ONE MUST BE DISMISSED FOR THE FAILURE
TO ALLEGE SUFFICIENT FACTS TO SUPPORT THE CHARGE**

Count One of the Indictment charges a "Conspiracy to Kill United States Nationals" in

violation of 18 U.S.C. § 2332(b), a provision entitled "Acts of Terrorism Transcending National

Boundaries."[1]  Since the indictment fails to allege sufficient facts to support this charge, Count

One must be dismissed for facial insufficiency.

We begin with Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which requires

that an indictment include ". . . a plain, concise, and definite written statement of the essential

facts constituting the offense charged . . . ." See United States v. LaSpina, 299 F.3d 165, 177 (2d

Cir. 2002) Where the essential facts have been omitted from the face of the indictment, a motion

will lie pursuant to Rule 12(b)(3)(B) to dismiss the indictment for facial insufficiency. See, e.g.,

United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998); United States v. Black, 2007 WL 683996

(S.D.N.Y. 2007) (Cote, J.).  The instant count is insufficient on its face because it charges a

"Conspiracy to Kill United States Nationals," but fails to allege any facts to support this

incendiary charge against Luis Felipe Moreno Godoy and Tareq Al Ghazi.[2]

The essence of the crime of conspiracy is an *agreement* to commit a crime or crimes.

See United States v. Broce, 488 U.S. 563, 570 (1989); Braverman v. United States, 317 U.S. 49,

---

[1] While the Congressional intent to extend this particular statute extraterritorially is quite obvious, it is not determinative of the issue. The Fifth Amendment Due Process Clause trumps Congressional power to legislate extraterritorially by requiring a sufficient nexus between the defendant, the criminal conduct, and the United States. For the reasons fully developed in Point Two, infra, there exists an insufficient nexus between this Spanish citizen; acts occurring entirely in Spain and Romania; and the United States. Thus, application of this provision to this defendant violates Due Process. See United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003)

[2] Since Monzer Al Kassar is unlikely to be extradited to the United States for the reasons outlined in the Outrageous Government Misconduct motion filed by do-defendant, Tareq Al Ghazi, our arguments focus solely on the two defendants presently before the Court.

53 (1942); United States v. Jones, 455 F.3d 134, 146 (2d Cir. 2006), cert denied __ U.S. __

(2007); United States v. Rubin, 844 F.2d 979, 983 (2d Cir. 1988). One of the elements of the

crime is that the defendant joined the conspiracy with the *specific intent* to commit the

underlying substantive offense. See Rubin, 844 F.2d at 984; United States v. Gaviria, 740 F.2d

174, 183 (2d Cir. 1984); United States v. Soto, 716 F.2d 989, 993 (2d Cir. 1983). This element,

like all other elements of the crime of conspiracy, must be factually supported from the face of

the indictment. The failure to do so renders a conspiracy count facially insufficient and subject

to dismissal. See Hamling v. United States, 418 U.S. 87, 117 (1974); LaSpina, 299 F.3d at 177;

United States v. Pirro, 212 F.3d 86, 91-92 (2d Cir. 2000). This count of the indictment is facially

insufficient because it fails to allege facts supporting the charge that defendants joined the

conspiracy with the specific intent to kill United States Nationals.

   The indictment describes defendant Moreno Godoy in the following terms:

> ". . . the defendant, has worked with MONZER AL KASSAR, a/k/a 'Abu Munawar,' a/k/a 'El Taous,' the defendant, in his weapons trafficking business for approximately the last 10 years. During this time period, MORENO's role has included managing financial matters for AL KASSAR, including arranging for various bank accounts to be used to conduct weapons transactions."

Indictment, page 3, para. 5. It goes on to describe the conspiracy as follows:

> ". . . the defendants, and others known and unknown, agreed to provide the FARC with millions of dollars worth of weapons to be used, among other things, to kill nationals of the United States in Colombia."

Indictment, page 5, para. 10.

   It appears from a review of the indictment that there exists a palpable disconnect between

the sale of the weapons and the purpose for which the purchasers of those weapons sought to use

them. While the stated purpose of the informants posing as representatives of the FARC may

have been to kill United States Nationals, there are no facts included within the four corners of

{00155055.DOC;1}3

this indictment to support the allegation that ***these defendants*** shared that purpose and joined in that conspiracy. Although the statute, 18 U.S.C. § 2332(b) "Acts of Terrorism Transcending National Boundaries," forms the basis for the charge of Conspiracy to Kill United States Nationals, the facts alleged as to ***these defendants*** support neither a conspiracy to commit terrorist acts, nor the conspiracy to kill United States nationals. Indeed, the facts alleged as to ***these defendants*** appear to support an entirely different conspiracy: the conspiracy to sell weapons. This is what the indictment alleges ***these defendants*** to have done. Since Count One alleges one conspiracy but factually supports a different conspiracy, it is facially insufficient and must be dismissed.

**POINT TWO**

**COUNT TWO MUST BE DISMISSED BECAUSE NEITHER THE STATUTE, CONGRESSIONAL INTENT, NOR DUE PROCESS ALLOWS FOR EXTRATERRITORIAL JURISDICTION OVER CRIMINAL ACTS WHICH OCCURRED OUTSIDE THE UNITED STATES**

Count One of the indictment charged the defendants with "The Conspiracy to Kill United States Nationals" in violation of 18 U.S.C. § 2332(b). That statute expressly provided for "extraterritorial jurisdiction" [18 U.S.C. § 2332b(e)] and made clear in its definition section that it applied to ". . . conduct occurring outside of the United States in addition to the conduct occurring in the United States." 18 U.S.C. § 2332b(g)(1). Count Two alleges the same conduct, "Conspiracy to Kill Officers and Employees of the United States," but relies upon a different statute. That statute, 18 U.S.C. § 1114, does not include a provision for extraterritorial jurisdiction. Since Count Two alleges conduct which occurred solely outside of the United States, it must be dismissed for lack of jurisdiction.

To begin, 18 U.S.C. § 1114 provides, in relevant part:

> "Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished . . . ."

This provision is incorporated into "Chapter 51-Homicide" of U.S. Code Title 18. It includes no provision for extraterritorial jurisdiction.

It is clear that ". . . legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Foley Brothers v. Filardo, 336 U.S. 281, 285 (1949); see Small v. United States, 544 U.S. 385, 388-89 (2005); United States v. Flores, 289 U.S. 137, 155 (1933); United States v. Aluminum Co. of America, 148 F.2d 416, 443

(2d Cir. 1945) (Hand, J.).  Where its intent is clear, however, Congress has authority to enforce laws beyond territorial boundaries of the United States.  E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244, 248 (1991) (superseded on other grounds by § 109 of the Civil Rights Act of 1991); United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003), cert denied 540 U.S. 933 (2003) and cert denied sub nom Ismoil v. United States, 540 U.S. 933 (2003); United States v. Kim, 246 F.3d 186, 188-89 (2d Cir. 2001); United States v. Gatlin, 216 F.3d 207, 211 (2d Cir. 2000)

Where the intent of Congress is unclear, the Supreme Court has articulated a test to determine whether a statute is to be applied extraterritorially:

> "The necessary locus, when not specifically defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations.  Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it.  If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard.

> \*\*\*\*\*\*\*

> "But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents."

United States v. Bowman, 260 U.S. 94, 97-98 (1922); see Gatlin, 216 F.3d at 211-212.

The Supreme Court has made clear the existence of a *"presumption"* against extraterritorial jurisdiction. See Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155, 173 (1993); Foley Brothers, 336 U.S. at 285; see also Yousef, 327 F.3d at 86; Kim, 246 F.3d at 188-189;

Gatlin, 216 F.3d at 211. That presumption applies to the statute here, Section 1114, "Protection of Officers and Employees of the United States." There is no Congressional intent to support extraterritorial jurisdiction evident from either the statute itself or the circumstances surrounding its enactment. Indeed, this statute was enacted in 1948 along with a host of general homicide provisions, including 18 U.S.C. § 1111, "Murder"; 18 U.S.C. § 1112, "Manslaughter"; and 18 U.S.C. § 1113, "Attempt to Commit Murder or Manslaughter."[3] All are included in "Chapter 51-Homicide," the general Title 18 provision encompassing homicide crimes.

Moreover, upon application of the Bowman test, the presumption against extraterritoriality cannot be overcome. Indeed, homicide offenses like those contained within Chapter 51 are precisely the types of "crimes against private individuals" which ". . . must, of course, be committed within the territorial jurisdiction of the government . . . ." Bowman, 260 U.S. at 98. The Bowman Court even lists the crime of "murder" as a typical example of the class of crime which is *not* given extraterritorial effect. Id. And while Bowman also refers to statutes "enacted because of the right of the government to defend itself," [id.] it does so only in reference to a "class" of criminal statutes. The "class" of criminal statutes incorporating Section 1114 is "Chapter 51-Homicide," the prototypical "crimes against private individuals" which under Bowman are *not* subject to extraterritorial jurisdiction. The fact that this individual homicide statute is labeled "Protection of Officers and Employees of the United States," cannot overcome the presumption. While this provision may appear related to the "right of the government to defend itself" under the Bowman test, it is not part of a *"class"* of similar criminal provisions which do so.

---

[3] In 1994, Congress added an extraterritorial murder provision, Section 1119, "Foreign Murder of United States Nationals," thus underscoring that the initial 1948 homicide provisions were not intended to apply extraterritorially.

There is one judge of this Court who does not share this view. In <u>United States v. Bin Laden,</u> 92 F.Supp.2d 189 (S.D.N.Y. 2000), Judge Sand examined jurisdictional objections to charges emanating from the prosecution for the United States Embassy bombings in Africa. Judge Sand gave extraterritorial effect to Section 1114, finding that the statute was "intended to protect vital interests" and "a significant number of United States officers and employees perform their official duties in places outside the United States." <u>Id.</u> at 202; <u>see also</u> <u>United States v. Benitez</u>, 741 F.2d 1312 (11th Cir. 1984), <u>cert denied</u> 471 U.S. 1137 (1985) (applying Section 1114 to acts which occurred in Colombia)

Significantly, within a few shorts months the Second Circuit criticized Judge Sand's decision in an unrelated case raising the issue of jurisdiction. In <u>Gatlin</u>, 216 F.3d, the Second Circuit examined whether the sexual abuse of a minor on a U.S. military base in Germany could be prosecuted in the United States. The statute at issue, 18 U.S.C. § 2243(a), referred to the Special Maritime and Territorial Jurisdiction of the United States contained within 18 U.S.C. § 7. Judge Sand had refused to apply the presumption against extraterritoriality because he viewed Section 7 as a jurisdictional provision rather than a criminal statute. The Second Circuit held that because Congress often incorporates jurisdictional provisions into criminal statutes, ". . . to accept Judge Sand's view would seriously undermine the presumption against extraterritoriality . . . ." <u>Gatlin</u>, 216 F.3d at 212. The Second Circuit ultimately held that the presumption against extraterritoriality required the dismissal of the indictment for the crimes which occurred in Germany.

Apart from the presumption against extraterritorial jurisdiction, there exists an important constraint on Congress's power even to authorize extraterritorial jurisdiction. The Due Process Clause of the Fifth Amendment requires a sufficient nexus between the defendant, his

extraterritorial criminal conduct, and the United States. The Second Circuit has followed the

Ninth Circuit in adopting the constitutional requirement of a sufficient nexus:

> "Our Circuit has not yet decided the extent to which the Due
> Process Clause limits the United States' assertion of jurisdiction
> over criminal conduct committed outside our borders. The Ninth
> Circuit has held that '[i]n order to apply extraterritorially a federal
> criminal statute to a defendant consistently with due process, there
> must be a sufficient nexus between the defendant and the United
> States, so that such application would not be arbitrary or
> fundamentally unfair.' We agree."

Yousef, 327 F.3d at 111 (citations omitted); see also United States v. Davis, 905 F.2d 245, 248-

249 (9th Cir. 1990), cert denied 498 U.S. 1047 (1991); Lee Brilmayer and Charles Norchi,

"Federal Extraterritoriality and Fifth Amendment Due Process," 105 Harv. L. Rev. 1217, 1262

(1992) ("When asked affirmatively to apply American laws to controversies having no

connection with the United States, and when application of American law would be

fundamentally unfair, courts should invoke the Fifth Amendment.") Though it held that due

process required a sufficient nexus, the Second Circuit found in Yousef that one existed between

the United States and the extraterritorial acts committed by notorious terrorist, Ramzi Yousef.

    In marked contrast, the nexus between the United States and these defendants is tenuous

at best.[4] For example, Felipe Moreno Godoy was a Spanish citizen working in Spain for

co-defendant Monzer Al Kassar, helping to oversee his various real estate and legitimate

business interests. The sole connection between Moreno Godoy and the United States was that it

served as the home base for the DEA agents who induced the crime. The pretext conceived by

those DEA agents and their informants could not create out of whole cloth a "nexus" where it did

not otherwise exist. This would be no different than creating federal jurisdiction by placing

---

[4] For a full description of the inadequacy of the "nexus" between the United States and these defendants, we refer
the Court to the Outrageous Government Misconduct motion filed by our co-defendant, Tareq Al Ghazi.

". . . a telephone call manufactured by the Government for the precise purpose of transforming a local bribery offense into a federal crime." United States v. Archer, 486 F.2d 670, 681 (2d Cir. 1973) (Friendly, J.). Neither one of these non-citizen defendants had any contact whatsoever with the United States. To borrow a phrase from the current political campaign, the sole basis for extraterritorial jurisdiction here was "words . . . just words." Those "words" were part of the ruse devised by the DEA agents. In reality there was no FARC; no risk to Americans working in Colombia; and no "nexus" to the United States. Under such circumstances, to subject these non-citizen defendants to prosecution and sentences of life imprisonment in the United States for conduct which, in fact, had no impact on the United States, would deprive them of fundamental fairness and due process of law in violation of the Fifth Amendment. Accordingly, Count Two must be dismissed.

POINT THREE

COUNT THREE MUST BE DISMISSED FOR FACIAL INSUFFICIENCY
BECAUSE THE FACTUAL ALLEGATIONS FIT WITHIN THE "EXCLUDED
CONDUCT" PROVISION OF THE STATUTE

In Count Three of the Indictment, the Grand Jury charged the defendants with "Conspiracy to Acquire and Use Anti-Aircraft Missles" in violation of 18 U.S.C. § 2332g.[5] This count must be dismissed for facial insufficiency because the factual allegations fit within the "excluded conduct" provision of the statute.

Section 2332g, a relatively new statute enacted in 2004, is entitled "Missile Systems Designed to Destroy Aircraft." It provides, in relevant part, that:

> ". . . it shall be unlawful for any person to knowingly produce, construct, or otherwise acquire, transfer directly or indirectly, receive, possess, import, export, or use, or possess and threaten to use - (A) an explosive or incendiary rocket or missile that is guided by any system designed to enable the rocket or missile to - (i) seek or proceed toward the energy radiated or reflected from an aircraft or toward an image locating an aircraft; or (ii) otherwise direct or guide the rocket or missile to an aircraft; (B) any device designed or intended to launch or guide a rocket or missile described in subparagraph (A);  or (C) any part or combination of parts designed or redesigned for use in assembling or fabricating a rocket, missile, or device described in subparagraph (A) or (B)."

18 U.S.C. § 2332g(a)(1).

The penalty section, which applies to conspiracies like the one alleged in Count Three, provides for a sentence ". . . to a term of imprisonment not less than 25 years or to imprisonment for life." 18 U.S.C. § 2332g(c)(1). These very harsh penalties were warranted by the grave

---

[5] Although Congress has made clear its intention that the statute be applied extraterritorially, to do so with the insufficient nexus between the defendants, the alleged criminal acts, and the United States present here would, for the reasons elaborated upon in Point Two, supra, violate due process.

danger posed by this particular criminal activity.   Perhaps because of those consequences, the

statute excluded the following conduct:

> "This subsection does not apply with respect to - (A) conduct by or
> under the authority of the United States or any department or
> agency thereof or of a State or any department or agency thereof;
> or (B) conduct pursuant to the terms of a contract with the United
> States or any department or agency thereof or with a State or any
> department or agency thereof."

18 U.S.C. § 2332g(a)(3)

A review of the indictment demonstrates that the facts alleged therein fit precisely within

the "excluded conduct" provision of the statute.   For example, the indictment alleges:

> "On or about February 6, 2007, MONZER AL KASSAR, a/k/a
> 'Abu Munawar,' a/k/a 'El Taous,' and TAREQ MOUSA AL
> GHAZI, the defendants, met with *two confidential sources*
> *working with the United States Drug Enforcement*
> *Administration (the 'DEA')* at Al Kassar's residence in Marbella,
> Spain, and discussed the sale of millions of dollars worth of
> weapons to the FARC.   **(The confidential sources will,**
> **hereinafter, be referred to as 'CS-1' and 'CS-2' or, collectively,**
> **as 'CSs')"**

Indictment, page 6, para. 9(a) (emphasis added)

> "On or about March 27, 2007, MONZER AL KASSAR, a/k/a
> 'Abu Munawar,' a/k/a 'El Taous,' the defendant, in the presence of
> TAREQ MOUSA AL GHAZI and LUIS FELIPE MORENO
> GODOY, the defendants, *agreed to provide prices to the CS s for*
> *surface-to-air missile systems* for the FARC to use to attack
> United States helicopters in Colombia."

Indictment, page 10, para. 9(s) (emphasis added); see paras. 9 (aa), (ee), (ff), (ll), (ss); see also

page 22, para. 19 (incorporating the overt acts into Count Three).

As made clear by the indictment itself, the conspiracy to obtain the missiles was "under

the authority of the United States," more specifically, an "agency thereof," the Drug

Enforcement Administration ("DEA").   It was the DEA which conceived of the ruse to purchase

surface-to-air missiles, and it was the DEA which sent the *"confidential sources"* to Spain

posing as FARC representatives determined to obtain those missiles. The entire conspiracy was not only under the "authority" of the United States, but was entirely conceived, directed, and executed by the United States.

The statute in question includes no "sting" provision which would allow for its application where, as here, Government agents seek to buy or sell surface-to-air missiles as part of a "sting" operation. Such "sting" provisions are not unknown. For example, Congress has incorporated just such a provision within 18 U.S.C. § 1956, "Laundering of Monetary Instruments." The statute ordinarily requires that the money constitute "proceeds of some form of unlawful activity," which would preclude prosecution in narcotics "sting" operations where the Government supplies the money. Section 1956(3) is the "sting" provision which eliminates the "proceeds of some form of unlawful activity" element and replaces it with "property *represented* to be the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(3) (emphasis added). To make its legislative intent crystal clear, Congress further provided:

> ". . . the term *'represented'* means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section."

Id. (emphasis added)

Indeed, Count Five of this very indictment charges money laundering in violation of 18 U.S.C. § 1956(a)(3). Had the indictment not charged under the "sting" exception we would be moving herein to dismiss for facial insufficiency because the indictment fails to allege that the laundered instruments were proceeds of a crime instead of funds supplied by the DEA. But there is no comparable "sting" exception incorporated within Section 2332g. There is, however, the specific provision excluding the conduct alleged herein from coming within the ambit of the

statute.[6]  Under the facts alleged, the Government cannot rely on this statute as the basis for a

prosecution. For that reason, Count Three is facially insufficient and must be dismissed. [7]

---

[6] There are, of course, a myriad of alternative criminal provisions which would address such conduct.  In United States v. Lakhani, 480 F.3d 171 (3d Cir. 2007), the Third Circuit reviewed a "sting" operation in which the defendant was induced to sell surface-to-air missiles.  Since Section 2332g had yet to be enacted, the defendant was charged with similar crimes including: Attempting to Provide Material Support to Terrorists (18 U.S.C. § 2339A);and  Illegal Brokering of Controlled Munitions (22 U.S.C. § 2778).

[7] We rely on the authorities cited in the within motion to dismiss Count One for facial insufficiency in support of the instant motion to dismiss Count Three.

## POINT FOUR

### COUNT FOUR VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT BECAUSE IT FAILS TO ALLEGE THE SPECIFIC INTENT TO FURTHER THE ILLEGAL ACTIVITIES OF THE FOREIGN TERRORIST ORGANIZATION

Count Four of the Indictment charges the defendants with violating 18 U.S.C. § 2339B, "Conspiracy to Provide Material Support Or Resources To Designated Foreign Terrorist Organizations."[8] This statute, assigning criminal liability based in part on acts committed by a third party, i.e. the "Foreign Terrorist Organization" ("FTO"), without a showing of personal guilt, violates the Due Process Clause of the Fifth Amendment. As will be demonstrated, the only way for such a statute to pass constitutional muster, is to require as an additional element the specific intent to further the illegal activities of the third party FTO. Since this was neither alleged in the indictment nor required under the statute as enacted, the statute is unconstitutional on its face and Count Four must be dismissed.

Our Fifth Amendment claim is based on the decision of the U.S. Supreme Court in Scales v. United States, 367 U.S. 203 (1961). Addressing a Fifth Amendment challenge to the provision of the Smith Act criminalizing Communist Party membership, the Court held:

> "In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity (here advocacy of violent overthrow), that relationship must be sufficiently substantial to satisfy the concept of personal guilt    in order to withstand attack under the Due Process Clause of the Fifth Amendment."

Id. at 224-25.

---

[8] As with the other so-called "terrorism" provisions previously addressed, the extraterritorial application of this statute, where there exists no nexus between the defendants, the acts alleged, and the United States, violates due process for the reasons explained in Point Two, supra.

The Material Support statute was designed to eliminate the ability of these foreign organizations to raise funds in the United States. Yet because the FTOs often play dual political, social, or charitable roles in their respective countries[9], courts have struggled with the issue of the *scienter* required to impose criminal liability on those individuals who support them. Cf. Scales, 367 U.S. at 229 ("groups . . . may embrace both legal and illegal aims.").

As initially drafted, the statute made it a crime when an individual "knowingly provides material support or resources to a foreign terrorist organization . . . ." 18 U.S.C. § 2339B (a)(1) (West 2004). Did the term "knowingly" refer to the provision of support alone, or did it extend as well to the "knowledge" that the support assisted the terrorist organization in achieving its violent and illegal objectives? If the "knowledge" element applied solely to the "support," an individual could be convicted through unwitting assistance to what was believed to be a charitable organization. See Baggett v. Bullitt, 377 U.S. 360, 373 (1964) (recognizing the ". . . hazard of being prosecuted for knowing but guiltless behavior . . . .")

In Humanitarian Law Project v. Department of Justice, 352 F.3d 382 (9th Cir. 2003) (hereinafter "Humanitarian Law Project I"), the Ninth Circuit answered the question in relation to a Sri Lankan terrorist organization. The court relied on Scales ". . . to determine whether holding a person culpable for his or her *relationship* to an organization is consonant with due process . . . ." Humanitarian Law Project I, 352 F.3d at 395. The court found that:

> ". . . serious due process concerns would be raised were we to accept the argument that a person who acts without knowledge of

---

[9] According to paragraph 6 of the indictment, the *Fuerzas Armadas Revolucionarias de Colombia* ("FARC"), shares goals that are somewhat similar to the Communist Party in the United States. Both organizations are "dedicated to the violent overthrow of the democratically elected Government . . . ." The political role played by the FARC was underscored in the front page article which appeared in the New York Times on Sunday, March 30, 2008. The article, Romero, "Files Released by Colombia Point to Venezuelan Bid to Arm Rebels," reflects that left wing governments in Venezuela and Ecuador which sympathize with the political goals of the FARC have been assisting the alleged terrorist organization.

> critical information about a designated organization presumably acts consistently with the intent and conduct of that designated organization."

Id. at 396. In order to avoid the violation of due process, the court concluded:

> ". . . we believe that when Congress included the term 'knowingly' in Section 2339B, it meant that proof that a defendant knew of the organization's designation as a terrorist organization or proof that a defendant knew of the unlawful activities that caused it to be so designated was required to convict a defendant under the statute."

Id. at 400.

Significantly, this decision was vacated a few short months later when Congress, acknowledging the *scienter* problem inherent in the statute as originally enacted, amended the statute to incorporate the *scienter* required by the 9th Circuit. See Humanitarian Law Project v. Department of Justice, 393 F.3d 902, 902 (9th Cir. 2004) (hereinafter "Humanitarian Law Project II") ("In light of Congress's recent amendment to the challenged statute, the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638, we affirm the judgement in part . . . .") In addition to the "knowingly provides material support or resources to a foreign terrorist organization" language, the statute now includes the *scienter* provision:

> "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . . or that the organization has engaged or engages in terrorism."

18 U.S.C. § 2339B(a)(1) (West 2007).[10] This new statutory *scienter* provision does not cure the Due Process deficiency inherent in the statute because it does not include the ***specific intent to further the illegal activities of the FTO.***

---

[10] In the Ninth Circuit's Humanitarian Law Project opinion, the *scienter* formulation was knowledge of the organization's designation by the State Department or knowledge *". . . of the unlawful activities that caused it to be so designated . . . ."* Id. at 400. This makes some sense as an alternative provision because it directly related to the knowledge requirement, but dispensed with the onerous requirement of knowledge of inclusion on the State Department's list.   The amended statute considerably broadens this *scienter* requirement by substituting as an alternative *". . . that the organization has engaged or engages in terrorism."* This broader *scienter* provision

In United States v. Al-Arian, 329 F.Supp.2d 1294 (M.D. Fla. 2004), the court confronted "head on" the issue of whether a specific intent was required. Although the Congress had yet to amend the statute, *the Government* nevertheless recognized the *scienter* problem, and sought to ameliorate it by assuming a burden to demonstrate that defendant knew the organization had been designated an FTO or that it had engaged in terrorist activity.[11] The court held that this was insufficient and required the Government to go further and prove a specific intent to support the illegal activities of the FTO:

> "... a Fifth Amendment due process personal guilt concern is suggested, because criminal liability and punishment is being justified and tied to the criminal activities of others. This Court is to avoid that constitutional concern and concludes that requiring a specific intent to further the illegal activities of a FTO satisfies this concern."

Id. at 1300.

The Al-Arian specific intent requirement has been rejected by two judges of this Court. See United States v. Sabir, 2007 WL 1373184 (S.D.N.Y. 2007) (Preska, J.); United States v. Paracha, 2006 WL 12768 (S.D.N.Y. 2006) (Stein, J.). It has also been rejected by other courts as well. See United States v. Warsame, ___ F.Supp.2d ___, 2008 WL 681344 (D. Minn. 2008); United States v. Abdi, 498 F.Supp.2d 1048, 1060-61 (S.D. Ohio 2007); Strauss v. Credit Lyonnais, 2006 WL 2862704 (E.D.N.Y. 2006); United States v. Assi, 414 F.Supp.2d 707, 720-

---

assigns criminal liability not only for the FTO's past acts, but for present and future ones as well. See, e.g., United States v. Aref, 2007 WL 603508 (N.D.N.Y. 2007) (finding that the knowledge requirement of § 2339B as amended was met in this "sting" conspiracy case, because the intent was clear to assist the Muslim organization in its terrorist activity in the very conspiracy case before the court.) This makes no sense as a substitute for knowledge of the State Department's designation, which is based on past acts alone. But more importantly, the further removed a defendant is from knowledge of the FTO's past acts, the greater the potential that the defendant can be convicted for mere association with the FTO. Accordingly, the amended statute suffers the same constitutional infirmity as the original statute.

[11] This case was decided before the statute had been amended to include the *scienter* requirement. The Government argued that the presence of the *scienter* requirement subsequently included in the amended statute cured the Due Process problem.

721 (E.D. Mich. 2006); <u>United States v. Marzook</u>, 383 F.Supp.2d 1056, 1070 (N.D. Ill. 2005).

Significantly, however, the Second Circuit has yet to rule on the issue.

Moreover, <u>Al-Arian</u>, 329 F.Supp.2d, comports with Supreme Court precedent requiring a

"specific intent" in cases where guilt is based in part on the actions of a third party organization.

For example, it was a specific intent requirement that saved the statute in <u>Scales</u> from

constitutional infirmity:

> "Whatever difficulties might be thought to inhere in ascribing a
> course of criminal conduct to an abstract entity are certainly cured,
> so far as any particular defendant is concerned, by the requirement
> of proof that he knew that the organization engages in criminal
> advocacy, and that it was his purpose to further that criminal
> advocacy."

<u>Scales</u>, 367 U.S. at 227 n. 18 (emphasis added).

In <u>Elfbrandt v. Russell</u>, 384 U.S. 11 (1966), the Court examined an Arizona loyalty oath

statute which subjected state employees to discharge and prosecution for perjury if determined to

have "knowingly and willfully" joined the Communist Party. The Court struck down the statute

expressly based on the absence of a specific intent to further the illegal purposes of the

organization:

> "Those who join an organization but do not share its unlawful
> purposes and who do not participate in its unlawful activities
> surely pose no threat, either as citizens or as public employees.
> Laws such as this which are not restricted in scope to those who
> join with the 'specific intent' to further illegal action impose, in
> effect, a conclusive presumption that the member shares the
> unlawful aims of the organization."

<u>Id.</u> at 17; <u>see</u> <u>United States v. Robel</u>, 389 U.S. 258, 266 (1967) (striking down a portion of the

Subversive Activities Control Act of 1950 for its failure to include a limitation to active

members who have the specific intent to further the illegal goals of the subversive organization).

The courts which have declined to follow Al-Arian, 329 F.Supp.2d, emphasize the distinction between mere *association* with the FTO, which does not violate the statute, and *action* supporting the FTO, which does. See, e.g., United States v. Paracha, 2006 WL 12768; United States v. Assi, 414 F.Supp.2d at 721; United States v. Marzook, 383 F.Supp.2d at 1067-1068. The action component is thought to remove the due process problem created by punishing mere association with the organization. This *action/association* distinction, however, represents a false dichotomy. In reality, *"association"* with an organization is not an inherently passive exercise devoid of any and all *"activity."* An individual must undertake some sort of *"action"* in order to *"associate"* with the organization. One must act in order to be said to have joined the group because membership requires action. For this reason, the omission of the "specific intent" requirement, taking the action/association out of the realm of protected political conduct, renders the statute violative of the Due Process Clause of the Fifth Amendment..

This same omission also renders the statute unconstitutional as applied to the facts of this case. This was, after all, a "virtual" crime; a "sting" in which no support, material or otherwise, was actually rendered to an FTO. The defendants are citizens of other countries faced with the prospect of spending the rest of their lives in U.S. prisons for actions taken on foreign soil at the behest of informants posing as Colombian representatives of the FARC. Had the informants posed as representatives of other organizations in other countries seeking arms for other purposes, there would have been no conceivable violation of Section 2339B. Under such circumstances, due process requires that at the very least, the individuals specifically intend to further the illegal objectives of the purported Foreign Terrorist Organization. That specific intent would be the only thing tangible about this "virtual" crime which could possibly justify the

prosecution of these foreign citizens plucked from foreign lands. Without it, the statute violates the Due Process Clause as applied to these defendants.

## POINT FIVE

## THE GOVERNMENT MUST DISCLOSE ITS PREDISPOSITION EVIDENCE UNDER THE SAME CONDITIONS AS IT DISCLOSES RULE 404(B) EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS

In a discovery demand letter dated January 28, 2008, the defendant made the following request of the Government:

> "The Defendant requests, pursuant to notice provisions of Rule 404(b) of the Federal Rules of Evidence, that the Government disclose in advance of trial any crimes, wrongs, or acts allegedly committed by him, upon which the Government intends to rely to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *The defense further requests that the Government disclose any and all illegal acts which will be introduced to prove Defendant's 'pre-disposition' to commit the instant offenses, and thus defeat the defense of entrapment.*"

The Government responded to our discovery requests generally by letter dated February 5th, but did not address either Rule 404(b) or "pre-disposition" evidence in its response.

It is no great revelation that the "sting" operation which resulted in the instant charges will be met at trial by an entrapment defense. This requires first that the defense prove by a preponderance of the evidence that ". . .the Government has induced an individual to break the law . . . ." Jacobson v. United States, 503 U.S. 540, 548-49 (1992). As the Second Circuit has held: "The defendant bears a 'relatively slight' burden in showing inducement . . . [and] need only demonstrate that the government initiated the crime." United States v. Mayo, 705 F.2d 62, 67 (2d Cir. 1983) (citation omitted). While we do not know whether the Government will stipulate to the "inducement" element at trial, the indictment makes crystal clear that government agents "initiated" the commission of these crimes.

Once "inducement" is established, the burden then shifts to the Government to prove beyond a reasonable doubt that the defendant was pre-disposed to commit the crime. See Jacobson, 503 U.S. at 549; United States v. Gagliardi, 506 F.3d 140, 149 (2d Cir. 2007); United States v. Brand, 467 F.3d 179, 189 (2d Cir. 2006), cert denied __ U.S. __ (2007) ; United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000); United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995), cert denied sub nom Di Girolamo v. United States, 516 U.S. 1063 (1996).    The Government can meet its burden of establishing "pre-disposition" by demonstrating an existing course of criminal conduct similar to the crime charged; a previous design to commit the crime; or a willingness to commit the crime evidenced by a ready response to the inducement. See Brand, 467 F.3d at 191; United States v. Brunshtein, 344 F.3d 91, 101-102 (2d Cir. 2003), cert denied 543 U.S. 823 (2004); Salerno, 66 F.3d at 547.    While we do not know which type of evidence the Government will rely upon, there is no question that pre-disposition evidence will form an integral part of the Government's case at trial.

Rule 404(b) allows for the admissibility of "other crimes, wrongs, or acts" for various "purposes" including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FRE 404(b). With regard to such evidence "the prosecution in a criminal case shall provide reasonable notice in advance of trial...of the general nature of any evidence it intends to introduce at trial." FRE 404(b). )    The types of evidence included within the rule and the purposes for which the evidence can be admitted are virtually limitless. See United States v. Stevens, 83 F.3d 60, 68 (2d Cir.), cert. denied 519 U.S. 902 (1996); United States v. Harris, 733 F.2d 994, 1006 (2d Cir. 1984).    The evidence is not, however, admissible to demonstrate the propensity to commit the charged crime *unless the defense of entrapment is raised.*    At that point, the Government is required to prove

predisposition and the evidence becomes admissible under Rule 404(b).  See United States v. Higham, 98 F.3d 285, 292 (7th Cir. 1996); United States v. Stringer, 902 F.2d 1335, 1337 (8th Cir. 1990); United States v. Harris, 65 F.Supp.2d 983, 987 (N.D. Iowa 1999).  In United States v. Tutino, 883 F.2d 1125, 1138 (2d Cir. 1989), cert denied 493 U.S. 1081 (1990), prior convictions were introduced by the Government in order to establish pre-disposition.  The Second Circuit found no error in the introduction of the pre-disposition evidence because it was, in any event, ". . . admissible under Rule 404(b) of the Federal Rules of Evidence . . . ." Id. at 1138-1139.

In sum, since the Government will be introducing pre-disposition evidence at trial, and since such evidence is akin to Rule 404(b) evidence, such evidence should be disclosed under the same terms and circumstances as required under that rule.   We ask that this Court order disclosure of the "pre-disposition" evidence six weeks prior to the commencement of trial, but in no event less than two weeks prior to trial. See, e.g. United States v. Solomonyan, 451 F.Supp.2d 626, 646 (S.D.N.Y. 2006) (two weeks prior to trial); United States v. Vega, 309 F.Supp.2d 609, 617 (S.D. N.Y. 2006) (ten business days prior to trial).  To do otherwise would be to promote gamesmanship and trial by surprise.

## POINT SIX

## DEFENDANT LUIS FELIPE MORENO GODOY SHOULD BE PERMITTED TO JOIN IN THE MOTIONS FILED BY CO-DEFENDANT, TAREQ MOUSA AL GHAZI

Finally, since there are many similarities between the cases and defenses of defendant, Luis Felipe Moreno Godoy and his co-defendant, Tareq Mousa Al Ghazi, we wish to join in and adopt the motions filed on behalf of our co-defendant.

## CONCLUSION

FOR THE FOREGOING REASONS, THE RELIEF REQUESTED

MUST, IN ALL RESPECTS, BE GRANTED

Respectfully submitted,

**GALLET, DREYER & BERKEY, LLP**
*Attorneys for Defendant, Luis Felipe*
*Moreno Godoy*
845 Third Avenue - 8th Floor
New York, New York 10022
(212) 935-3131

By: _____
Roger L. Stavis