UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                 :

UNITED STATES OF AMERICA        :
                                   :

    - v. -                      :        S3 07 Cr. 354 (JSR)
                                   :

MONZER AL KASSAR,         :
        a/k/a "Abu Munawar,"    :
        a/k/a "El Taous,"        :
TAREQ MOUSA AL GHAZI, and  :
LUIS FELIPE MORENO-GODOY,   :
                                     :

           Defendants.       :
                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## GOVERNMENT'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS AND FOR OTHER RELIEF


 

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America


BOYD M. JOHNSON III
LESLIE C. BROWN
BRENDAN R. MCGUIRE
Assistant United States Attorneys
    - Of Counsel -

## TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    The Defendants' Motion to Dismiss The Indictment Based
      On Alleged Government Misconduct Should Be Denied
      Without A Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            1.    The Government's Involvement In The
                  Investigation Did Not Violate Due Process . . . . . . . . . . . . . . . . . . . . 3

            2.    The Government Did Not Manufacture
                  Jurisdiction In Violation of Due Process . . . . . . . . . . . . . . . . . . . . . 9

            3.    A Sufficient Nexus Exists Between The
                  Defendants' Conduct And The United States  . . . . . . . . . . . . . . . . . . 11

            4.    Al Ghazi And Moreno Had Fair Warning
                  They Were Violating U.S. Law . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.   Counts One And Three Of The Indictment Are Factually Sufficient. . . . . . . . . . . . . . . . 12

      A.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  18 U.S.C. § 1114 Applies Extraterritorially To The Conduct
      Of Foreign Nationals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   18 U.S.C. § 2339B Does Not Require Specific Intent To
      Further The Illegal Activities Of A Foreign Terrorist Organization. . . . . . . . . . . . . . . . 20

      A.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      B.    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V.      The Motion To Remove Surplusage Should Be Denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.     The Disclosure Of Predisposition Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VII.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

*Cases:*

*Boim v. Quranic Literacy Institute,*
    291 F.3d 1000 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Costello v. United States,*
    350 U.S. 359 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*EEOC v. Arabian America Oil Co.,*
    499 U.S. 244 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Greene v. United States,*
    454 F.2d 783 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hamling v. United States,*
    418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*Humanitarian Law Project v. United States Department of Justice,*
    352 F.3d 382 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Rochin v. California,*
    342 U.S. 165 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sawyer v. Sandstrom,*
    615 F.2d 311 (11th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Scales v. United States,*
    367 U.S. 203 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Scales,*
    367 U.S. 203 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*United States v. Abdi,*
    498 F. Supp. 2d 1048 (S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Abdi,*
    498 F. Supp. 2d at 1061 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Al-Arian,*
    329 F. Supp. 2d 1294 (M.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*United States v. Alfonso*,
    143 F.3d 772 (2d Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-16

*United States v. Archer*,
    486 F.2d 670 (2d Cir. 1973).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Assi*,
    414 F. Supp. 2d 707 (E.D. Mich. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*United States v. Batres-Santolino*,
    521 F. Supp. 744 (N.D. Ca. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Benitez*,
    741 F.2d 1312 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

*United States v. Bin Laden*,
    92 F. Supp. 2d 189 (S.D.N.Y. 2000).. . . . . . . . . . . . . . . . . . . . . . . 11, 12, 18, 19 20

*United States v. Bowman*,
    260 U.S. 94 (1922). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Calandra*,
    414 U.S. 338 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Carboni*,
    204 F.3d 39 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Chin*,
    934 F.2d 393 (2d Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Contreras*,
    776 F.2d 51 (2d Cir. 1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Cotten*,
    471 F.2d 744 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Cuervelo*,
    949 F.2d 559 (2d Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. De La Pava*,
    268 F.3d 157 (2d Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. DePalma*,

461 F. Supp. 778 (S.D.N.Y. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*United States v. Diaz*,
 176 F.3d 52 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*United States v. Evans*,
 667 F. Supp. 974 (S.D.N.Y. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*United States v. Felix-Gutierrez*,
 940 F.2d 1200 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*United States v. Gambino*,
 566 F.2d 414 (2d Cir. 1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*United States v. Gardner*,
 658 F. Supp. 1573 (W.D. Pa. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*United States v. Hernandez*,
 980 F.2d 868 (2d Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*United States v. LaPorta*,
 46 F.3d 152 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3-5, 8, 10

*United States v. Lakhani*,
 480 F.3d 171 (3d Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*United States v. Lau Tung Lam*,
 714 F.2d 209 (2d Cir. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*United States v. Marzook*,
 383 F. Supp. 2d 1056 (N.D. Ill. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22, 25

*United States v. Myers*,
 692 F.2d 823 (2d Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 6

*United States v. Orena*,
 32 F.3d 704 (2d Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*United States v. Paracha*,
 No. 03 Cr. 1197 (SHS), 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006). . . . . . . . . .   22, 24, 25

*United States v. Rahman*,
 189 F.3d 88 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 3, 5

*United States v. Rommy,*
     506 F.3d 108 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Russell,*
     411 U.S. 423 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*United States v. Sabir,*
     No. S4 05 Cr. 673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007). . . . . . . . . . . 22

*United States v. Scarpa,*
     913 F.2d 993 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Schmidt,*
     105 F.3d 82 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Stavroulakis,*
     952 F.2d 686 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Twigg,*
     588 F.3d 373 (3d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Vasquez-Velasco,*
     15 F.3d 833 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Wallace,*
     85 F.3d 1063 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Walsh,*
     194 F.3d 37 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Warsame,*
     537 F. Supp. 2d 1005 (D. Minn. Mar. 12, 2008). . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

*United States v. West,*
     511 F.2d 1083 (3d Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Williams,*
     504 U.S. 36 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Yousef,*
     327 F.3d 56 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

vi

*Statutes, Rules & Other Authorities:*

18 U.S.C. § 1114. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17-19

18 U.S.C. § 1117. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 1119. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 1959 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 2112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 2332(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 15, 17

18 U.S.C. § 2332g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 17

18 U.S.C. § 2339A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 2339B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20, 21

18 U.S.C. § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 641. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Antiterrorism and Effective Death Penalty Act,
Pub. L. No. 104-132, § 301(b), 110 Stat.
    1274 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Crim. P. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Rep. No. 104-383 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                            :

UNITED STATES OF AMERICA      :
                            :

     - v. -              :         S3 07 Cr. 354 (JSR)
                            :

MONZER AL KASSAR,         :
     a/k/a "Abu Munawar,"    :
     a/k/a "El Taous,"       :
TAREQ MOUSA AL GHAZI, and   :
LUIS FELIPE MORENO-GODOY,   :
                            :

              Defendants.    :
                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS AND FOR OTHER RELIEF

The Government respectfully submits this memorandum in opposition to motions filed by

defendants Tareq Mousa al Ghazi ("al Ghazi") and Luis Felipe Moreno-Godoy ("Moreno") for

the following relief:  (1) to dismiss the Indictment because the Government violated their rights

under the Due Process Clause during the investigation, or, alternatively, to require the Court to

conduct an evidentiary hearing on the issue; (2) to dismiss Counts One and Three for factual

insufficiency and because the factual allegations of Count Three fit within the excluded conduct

provision of 18 U.S.C. § 2332g ; (3) to dismiss Count Two because 18 U.S.C. § 1114,

criminalizes the murder of U.S. officers or employees, should not be applied extraterritorially; (4)

to dismiss Count Four because 18 U.S.C. § 2339B violates the Due Process Clause; (5) to

remove purported surplusage from the Indictment; and (6) to order the Government to disclose

any predisposition evidence at the same time that the Government discloses any evidence

pursuant to Federal Rule of Evidence 404(b).  As discussed below, the Court should deny the

defendants' motions in their entirety.[1]

I.    **The Defendants' Motion To Dismiss The Indictment Based On Alleged Government Misconduct Should Be Denied Without A Hearing**

The defendants seek dismissal of the Indictment, contending that the Government's

alleged misconduct in the undercover investigation that led to their arrests violated their due

process rights.  The defendants claim that (1) the Government was improperly involved in the

offenses; (2) the Government manufactured jurisdiction; (3) there is an insufficient nexus

between the defendants' conduct and the United States; and (4) they had no fair warning that the

charged terrorism offenses were violations of U.S. law.  (See Memorandum of Law of Defendant

Tareq Mousa al Ghazi in Support of Motion to Dismiss the Indictment and for Other Relief ("al

Ghazi Br.") at 8-23).  Because the undisputed facts of this case do not approach the type of

outrageous Government conduct required for the extraordinary remedy the defendants seek, and

jurisdiction over the defendants is otherwise proper, their motion to dismiss on due process

grounds should be denied without a hearing.

A.    **Applicable Law**

"The Supreme Court has suggested that in an extreme case, Government involvement in

criminal activity might be 'so outrageous that due process principles would absolutely bar the

Government from invoking judicial processes to obtain a conviction.'"  United States v. Rahman,

189 F.3d 88, 131 (2d Cir. 1999) (quoting United States v. Russell, 411 U.S. 423, 431-32 (1973)).

---

[1]  Al Ghazi and Moreno seek to join in each others' motions.  As a result, the Government addresses their respective arguments as though they had been raised by both defendants.

2

"However, only Government conduct that 'shocks the conscience' can violate due process." Id.
(quoting United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991)). "The paradigm examples of
conscience-shocking conduct are egregious invasions of individual rights." Rahman, 189 F.3d at
131 (quoting Rochin v. California, 342 U.S. 165, 172 (1952) (breaking into suspect's bedroom,
forcibly attempting to pull capsules from his throat, and pumping his stomach without his
consent)). "Especially in view of the courts' well-established deference to the Government's
choice of investigatory methods, see United States v. Myers, 692 F.2d 823, 843 (2d Cir.1982),
the burden of establishing outrageous investigatory conduct is very heavy, see United States v.
Schmidt, 105 F.3d 82, 91 (2d Cir. 1997)." Id. "Such a claim rarely succeeds." United States v.
LaPorta, 46 F.3d 152, 160 (2d Cir. 1994) (citations omitted).

**B.     Discussion**

**1.     The Government's Involvement In The Investigation Did Not Violate Due Process**

The defendants initially contend that the Government "was so deeply involved in luring
the defendants into the arms deal and then in creating and committing the purported offenses"
that it violated their due process rights. (See al Ghazi Br. at 10). While the unsworn version of
certain facts presented in al Ghazi's submission raises possible trial defenses -- including, for
example, entrapment -- it falls far short of demonstrating the type of outrageous Government
misconduct required for outright dismissal of the Indictment before trial.

The relevant facts of the DEA operation that culminated in the defendants' arrests in
Romania in June 2007, and in Monzer al Kassar's simultaneous arrest in Spain, are relatively
straightforward, and do not appear to be in dispute. There is no dispute, for example, that the
Government instructed an informant (hereinafter referred to as "CS-1") to approach al Ghazi

3

about a weapons transaction.  (See al Ghazi Br. at 4).  There is also no dispute that al Ghazi later introduced CS-1 to al Kassar in connection with the weapons deal.  (Id. at 6).

There is no dispute that CS-1 and two additional DEA informants posing as representatives of the FARC (hereinafter referred to as "CS-2" and "CS-3," and collectively with CS-1 as the "CSs") met with al Kassar and al Ghazi in February 2007, and with al Kassar, al Ghazi, and Moreno in March 2007, at al Kassar's Marbella, Spain, residence.  (Id. at 7).  During these meetings, CS-2 and CS-3 identified themselves as representatives of the FARC seeking to purchase weapons to kill Americans in Colombia.  (See Indictment ¶¶ 11(b), 11(p), 11(s)).[2] There is also no dispute that during the March 2007 meetings al Kassar provided the CSs with, among other things, specifications for surface-to-air missiles that al Kassar was prepared to sell to the CSs.  (Id. at ¶ 11(aa)).  Finally, there is no dispute that in June 2007, in connection with the proposed weapons deal, al Ghazi and Moreno traveled to Bucharest, Romania, on behalf of al Kassar, where they were ultimately arrested on the present charges.  (See Indictment at ¶ 11(ddd)).

---

[2]  In his motion, al Ghazi contends that "there is no evidence that al Ghazi actually understood what was being discussed" during the February and March 2007 meetings.  (See al Ghazi Br. at 7).  In fact, however, as detailed in the same DEA report quoted by al Ghazi at the outset of his brief, during his post-arrest statement to the DEA, al Ghazi admitted, among other things, that he was aware that CS-2 and CS-3 were working for the FARC, and that the FARC was involved in drug trafficking and that the FARC was at war with the United States.  Al Ghazi has not moved to suppress his post-arrest statements.  In any event, whether or not and at what point al Ghazi knew the full extent of the criminal conspiracies in which he participated, and whether or not he was entrapped, are all issues for a jury trial and not for a pretrial motion to dismiss.  See United States v. Chin, 934 F.2d at 398 (holding that the outrageousness of the Government's conduct for due process purposes must be viewed "standing alone" and without regard to the defendant's criminal disposition).

4

The Government's use of informants in an undercover operation to pose as purchasers of
contraband -- in this case millions of dollars worth of deadly weapons -- in order to build a
criminal case against the suppliers of such contraband is neither novel nor nefarious.  See
Rahman, 189 F.3d at 131 ("Undercover work, in which a Government agent pretends to be
engaged in criminal activity, is often necessary to detect criminal conspiracies.  If such work is to
succeed, the undercover agent must have 'something of value to offer' the conspirators.")
(quoting United States v. Russell, 411 U.S. at 432)).  Here, the DEA, through the CSs, simply
presented al Ghazi, Moreno, and al Kassar with an opportunity to commit various crimes by
agreeing to sell weapons to the FARC to be used to kill Americans in Colombia.  At trial, the
Government expects to prove that it was an opportunity that al Ghazi, Moreno, and al Kassar all
voluntarily and knowingly agreed to take in exchange for an expected profit.

The Second Circuit has routinely rejected claims like those the defendants are pressing.
See  Rahman, 189 F.3d at 131 (Government informant's involvement in conspiracy to bomb
targets in New York City, allegedly consisting of lending direction, technical expertise, and
critical resources, did not shock the conscience, and therefore did not violate defendants' due
process rights); United States v. Schmidt, 105 F.3d 82, 91-92 (2d Cir. 1997) (Government's
"extensive" involvement in sting operation, in which law enforcement officer posed as hit man
whom defendant believed she had hired to kill special agents, and federal agents actually
conducted a controlled breakout from mental observation unit where defendant was held, did not
rise to level of outrageousness so as to deprive defendant of due process); United States v.
LaPorta, 46 F.3d at 160 (no due process violation resulted from Government sting operation in
which informant supplied government-owned car to be burned because no Government agents

5

lied or committed other crimes and defendant, not informant, committed substantial jurisdictional act of burning car); United States v. Myers, 692 F.2d at 837 (Government's elaborate sting operation in "Abscam" case, which involved three FBI agents and a private citizen posing as representatives of two Middle Eastern sheiks willing to pay bribes to members of the United States Congress, did not violate due process because "its essential characteristic was the creation of the opportunity for the commission of crime by those willing to do so."); but see United States v. Cuervelo, 949 F.2d 559, 568 (2d Cir. 1991) (defendant's due process allegations that undercover agent committed outrageous conduct by engaging in sexual relationship with her justified remand for hearing on issues of whether agent did engage in sexual intercourse and deliberately used it as law enforcement tool in investigation, whether that conduct was attributable to the Government, and when sexual relations ended).  Here, in contrast to the alleged conduct of the undercover agent in Cuervelo that led the Second Circuit to remand for a hearing, the Government's conduct during the undercover investigation merely created "an opportunity for the commission of crime by those willing to do so," Myers, 692 F.2d at 837, was not materially different from that present in Rahman, Schmidt, LaPorta, and Myers, and certainly did not shock the conscience sufficient to warrant dismissal of the Indictment.[3]

_____

[3]  Al Ghazi's unsubstantiated claim that the Government "conducted a long-term U.S. law enforcement operation in Spain and in Lebanon without informing the proper authorities" does not change the analysis.  (See al Ghazi Br. at 9).  The defendants have no standing to challenge the nature of the international law enforcement coordination in this case, and the defendants cite no authority whatsoever for the proposition that the details of the Government's coordination with its international law enforcement counterparts abroad is somehow relevant to the present motion to dismiss.  In fact, the Second Circuit has stated:  "As the Supreme Court has long observed, absent explicit treaty language conferring individual enforcement rights, treaty violations are generally addressed by the signatory sovereigns through diplomatic channels."

(continued...)

This case is strikingly similar to a case decided last year by the Third Circuit.  See United States v. Lakhani, 480 F.3d 171 (3d Cir. 2007).  In Lakhani, the Government conducted a sting operation using an informant to target a purported weapons dealer located in London.  Id. at 174-75.  At the Government's direction, the informant held himself out to be a member of a terrorist organization seeking to purchase weapons to be used to kill Americans.  Id. at 175.  Ultimately, after the defendant appeared to be unable to supply the shoulder-fired missile the informant had requested, U.S. and Russian authorities expanded the undercover operation and actually supplied a fake missile to the defendant in Russia.  Id. at 176-77.  Even though the Government acted as both the buyer and seller in the supposed illegal arms transaction, and the Government informant first suggested the criminal activity to the defendant, the Third Circuit held that the defendant's use of his own knowledge of the arms business for the benefit of the illegal scheme meant that due process was not violated.  Id. at 182-83.  Accordingly, Lakhani supports denial of the motions in this case, where the CSs merely posed as the buyers of the FARC-destined weapons.

The narcotics-sting cases cited by the defendants are unpersuasive.  In these cases, the Government either supplied the narcotics or the narcotics-producing infrastructure or played a far greater role than here in directing the criminal operations of defendants -- who had little or no criminal backgrounds.  See United States v. Twigg, 588 F.3d 373, 380-81 (3d Cir. 1981) (due process violation found where Government "gratuitously" supplied glassware and indispensable ingredients and materials for methamphetamine laboratory, and neither defendant had

---

[3](...continued)

United States v. Rommy, 506 F.3d 108, 129 (2d Cir. 2007) (holding that "a proper respect for the diplomatic choices of sovereign nations prompts courts generally to apply 'a strong presumption against inferring individual rights from international treaties'" (citing United States v. De La Pava, 268 F.3d 157, 164 (2d Cir. 2001)).

understanding of how to actually manufacture methamphetamine); United States v. West, 511 F.2d 1083, 1085 (3d Cir. 1975) (Government "passed the point of toleration" where its agent set up accused in illicit activity by supplying him with narcotics and then introducing him to another agent acting as a prospective buyer); Greene v. United States, 454 F.2d 783, 787 (9th Cir. 1971) (due process violated where Government agent offered to supply equipment, urged defendants to resume illegal liquor production, and acted as only customer for illicit liquor); United States v. Gardner, 658 F.Supp. 1573, 1579 (W.D. Pa. 1987) (although Government did not directly supply defendant with drugs, it supplied the other necessary ingredients including money to ferment criminal activity, and perpetually set up the defendant, who had no prior involvement in criminal activity whatsoever, through a Government agent, due process was violated); United States v. Batres-Santolino, 521 F.Supp. 744, 752 (N.D. Ca. 1981) (due process violated where Government supplied all the drugs to defendants who were novices in the field of drug dealing).

Finally, the defendants' reliance on the Second Circuit's decision in United States v. Archer, 486 F.2d 670 (2d Cir. 1973), is misplaced. Although defendants claim that "the clear message in Archer is that under the appropriate facts, the court retains the authority to dismiss an indictment where the government over-reaches in a 'sting' operation," see al Ghazi Br. at 17, the holding in Archer was "carefully limited . . . and addressed 'a proper principle of federal criminal procedure, not . . . due process.'" LaPorta, 46 F.3d at 160. Moreover, in Archer, the Second Circuit found that the Government agents lied and committed other crimes during the investigation; here, in contrast, defendants do not and cannot make any similar allegation. Id.

8

**2.    The Government Did Not Manufacture Jurisdiction In Violation Of Due Process**

Defendants claim that the Government manufactured jurisdiction in this case, and improperly "transformed this weapons transaction into violations of U.S. law by misrepresenting that the weapons were going to the FARC." (See al Ghazi Br. at 18). This claim is without merit.

The Second Circuit has stated:

> [T]he manufactured jurisdiction concept is properly understood not as an independent defense, but as a subset of three possible defense theories: (i) the defendant was entrapped into committing a federal crime, since he was not predisposed to commit the crime in an way necessary for the crime to qualify as a federal offense (citation omitted); (ii) the defendant's due process rights were violated because the government's actions in inducing the defendant to commit the federal crime were outrageous (citation omitted); or (iii) an element of the federal statute has not been proved, so federal courts have no jurisdiction.

United States v. Wallace, 85 F.3d 1063, 1065-55 (2d Cir. 1996). As previously discussed, any entrapment defense should be presented at trial, at which time the Government expects to prove both that the defendants were predisposed to commit the charged conspiracy crimes and ready, willing, and able to complete them. Moreover, for the reasons stated in Section I above, the defendants cannot argue that their due process rights were violated by outrageous Government conduct.

With respect to the third defense theory identified in Wallace, the Second Circuit has refused to dismiss indictments "when there is any link between the federal element and a voluntary, affirmative act of the defendant." Id. at 1066. Accordingly, "when confronted with situations in which (i) the [federal agency] introduces a federal element into a non-federal crime and (ii) the defendant then takes voluntary action that implicates the federal element, [the Second

9

Circuit] has consistently held that federal jurisdiction has not been improperly 'manufactured' and that the statutory elements have been met . . . ." Id. (citing LaPorta, 46 F.3d at 154, 160 (FBI informant asked defendant, suspected of being an arsonist, if he would set fire to informant's child's car, which was actually a government-owned car; claim of manufactured jurisdiction rejected because the defendants themselves "committed the substantial jurisdictional act of burning the government [car]"); United States v. Lau Tung Lam, 714 F.2d 209, 210-11 (2d Cir. 1983) (DEA informant, asked by defendant whether she knew of heroin buyers, directed defendant to U.S. drug buyers; conviction for conspiracy to import heroin into United States upheld and claim of manufactured jurisdiction rejected because defendant "himself committed the substantial jurisdictional act of bringing drugs into the United States"); United States v. Gambino, 566 F.2d 414, 418-19 (2d Cir. 1977) (Hobbs Act conviction upheld and claim of "contrived jurisdiction" rejected because even though government created phony garbage collection business in Bronx with ties to interstate commerce, "[n]o one asked [the defendant] to threaten the FBI agent [posing as a business owner] or to hit him on the head")).

Here, although the DEA instructed the CSs to portray themselves as representatives of the FARC seeking to purchase weapons to be used to kill Americans, represent themselves as weapons purchasers for the FARC, the defendants themselves are alleged to have voluntarily agreed to sell such weapons to the CSs. By agreeing to sell millions of dollars worth of weapons to the FARC to be used to kill Americans, and taking the various steps to carry out that agreement detailed in the Indictment, the defendants themselves took "voluntary actions that implicated the federal element" of the charged conspiracy crimes, and jurisdiction was not manufactured in violation of due process. See United States v. Wallace, 85 F.3d at 1066.

10

3.    **A Sufficient Nexus Exists Between The Defendants' Conduct And The United States**

Next, the defendants assert that there was an insufficient nexus between their conduct and the United States.  (See al Ghazi Br. at 20-23).  The assertion is without merit.

In United States v. Yousef, the Second Circuit held that "'[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." 327 F.3d 56, 111 (2d Cir. 2003).  There was a sufficient nexus to the United States in that case because the defendants "conspired to attack a dozen United States-flag aircraft in an effort to inflict injury on this country and its people." Id. at 112.  Similarly, here, where the Indictment charges that the defendants conspired to provide millions of dollars worth of weapons to be used by the FARC to kill Americans, "it cannot be argued seriously that the defendants' conduct was so unrelated to American interests as to render their prosecution in the United States arbitrary or fundamentally unfair." Id.  The defendants' repeated contention that they were "lured" into committing the charged terrorism crimes does not render Yousef less controlling on their motion to dismiss, but simply suggests a potential entrapment defense to be litigated at trial.

4.    **Al Ghazi And Moreno Had Fair Warning They Were Violating U.S. Law**

The defendants contend that they had "no reason to expect that U.S. law would be violated by an agreement in Spain to provide weapons to individuals posing as members of a Colombian paramilitary organization."  (See al Ghazi Br. at 23).  Although defendants argue that their case is distinguishable from United States v. Bin Laden, 92 F. Supp. 2d 189 (S.D.N.Y.

11

2000), in fact Bin Laden controls and confirms that the defendants' fair notice argument is without merit.

The defendants need not have known "the breadth of the statutory framework that would serve as the basis for the charges against [them] – few defendants do." Id. at 219. The key in Bin Laden was that there was "no room for [the defendants] to suggest that [they had] suddenly learned that mass murder was illegal in the United States or anywhere else." Id. The criminal nature of the conduct alleged here was similarly obvious. The Indictment alleges that the defendants voluntarily and knowingly conspired to provide millions of dollars worth of lethal weapons to the FARC to enable the terrorist organization to kill Americans. As in Bin Laden, the defendants here, "'cannot be surprised to learn that [their] conduct was criminal under the laws of every civilized nation, and [thus] [they have] no right to complain about the particular forum in which [they] are brought to trial.'" Id. at 219 n. 54.

Based on the foregoing, the defendants' motion to dismiss the Indictment based on alleged Government misconduct in the investigation or on the other grounds detailed above should be denied.[4]

## II.    Counts One And Three Of The Indictment Are Factually Sufficient

The defendants move to dismiss Counts One and Three of the Indictment for factual insufficiency. (See Memorandum of Law of Defendant Luis Felipe Moreno Godoy ("Moreno Br.") at 2-4, 11-14). The defendants claim that Count One, which charges conspiracy to kill U.S.

---

[4]    Moreover, because there are no material facts in dispute related to the Government's conduct, the Court should deny the motion to dismiss based on purported due process violations without a hearing. See LaPorta, 46 F.3d at 160 (noting that nothing "requires a district court to conduct a hearing every time a defendant alleges outrageous government misconduct. . . . Without disputed facts, no hearing [is] necessary.").

nationals, in violation of 18 U.S.C. § 2332(b), fails to allege facts that demonstrate they joined the charged conspiracy with the specific intent to kill U.S. nationals.  The defendants contend that Count Three, which charges conspiracy to acquire and use anti-aircraft missiles, in violation of 18 U.S.C. § 2332g, is factually insufficient because their conduct was elicited by the CSs, and therefore approved by the DEA, and that, as a result, such conduct is exempt under 18 U.S.C. § 2332g(a)(3)(A).

The defendants' claims are unfounded.  Counts One and Three contain the essential elements of the charged offenses.  As such, those charges are valid on their face, call for a trial on the merits and cannot be challenged on sufficiency grounds prior to the close of the Government's case-in-chief.  In addition, the defendants' participation in Count Three does not qualify as "excluded conduct."  Accordingly, the defendants' motion to dismiss Counts One and Three should be denied.

## A.    Applicable Law

Federal Rule of Criminal Procedure 7(c) requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." The validity of an indictment is tested by its allegations, not by whether the Government can ultimately prove its case.  See Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Contreras, 776 F.2d 51, 54 (2d Cir. 1985).  "'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  An indictment will be deemed

13

sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant was convicted." United States v. Orena, 32 F.3d 704, 714 (2d Cir. 1994) (citations omitted).

Based on these principles, the Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." United States v. Walsh, 194 F.3d 37, 45 (2d Cir. 1999) (internal quotation marks and citation omitted). Indeed, the Second Circuit has consistently upheld indictments that "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Alfonso, 143 F.3d at 776 (internal quotation marks and citation omitted); see also Hamling, 418 U.S. at 117 ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself.").

"An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charges on the merits." United States, 350 U.S. at 365; see also United States v. Williams, 504 U.S. 36, 54 (1992); United States v. Calandra, 414 U.S. 338, 345 (1974) ("indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"). A defendant must wait until after the close of the Government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. See Fed. R. Crim. P. 29.

**B.    Discussion**

In this case, Counts One and Three track almost exactly the words of the relevant statutes. (See Indictment ¶¶ 9, 10 (Count One) and ¶¶ 17, 18 (Count Three). Moreover, the Indictment alleges dozens of overt acts in furtherance of both the conspiracy to kill U.S. nationals (Count

One) and the conspiracy to acquire and use anti-aircraft missiles (Count Three), including, among other acts: (1) al Ghazi's participation in meetings at which the CSs, claiming to be representatives of the FARC, advised him that they wanted his assistance to purchase weapons that would be used to kill Americans (see id. ¶¶ 11(a), (b), (d), (o), (p)); (2) al Ghazi's receipt of payment for his participation in the charged conspiracies (see id. ¶ 11(r)); (3) al Ghazi's and Moreno's participation in meetings at which it was discussed that they were assisting the FARC to acquire anti-aircraft missiles and other weapons which would be used against Americans (see id. ¶¶ 11(s), (v), (z), (aa), (cc), (ee), (hh)); (4) Moreno's coordination and receipt of partial payment for those weapons (see id. ¶¶ 11(u), (w), (ii), (kk), (nn), (xx), (ccc)); (5) Moreno's assistance in arranging for the transportation of the requested weapons (see id. ¶ 11(tt)); and (6) al Ghazi's and Moreno's travel to Romania in June 2007 to facilitate the weapons transaction (see id. ¶ 11(ddd)).

The defendants claim Count One is factually insufficient because it fails to allege facts demonstrating they joined the charged conspiracy with the specific intent to kill U.S. nationals. The argument should be rejected. Count One tracks the language of the statute charged, which is all the Second Circuit requires.[5] See, e.g., Alfonso, 143 F.3d at 776. In addition, Count One alleges the time, place and manner in which the defendants engaged in the charged conspiracy. As such, it "plainly contains the elements of the offense charged and fairly informs [the defendants] of the charge against which [they] must defend and . . . enables [them] to plead an acquittal or conviction in bar of a future prosecution for the same offense." Id.

---

[5]  Count One charges a violation of 18 U.S.C. § 2332(b), which provides, in relevant part, "whoever outside the United States . . . engages in a conspiracy to kill a national of the United States" shall be guilty of a crime.

Contrary to the defendants' claim, Count One need not lay out the evidence the Government will introduce to prove the allegations.  Hamling, 418 U.S. at 117.  Rather, at this stage of the proceedings, Count One is to be read to include facts implied by the statutory allegations, including the defendants' knowledge that the weapons they agreed to supply would be used to kill U.S. nationals, and thus their specific intent to participate in the conspiracy charged in Count One.  See United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) ("an indictment must be read to include facts which are necessarily implied by the specific allegations made").  Moreover, Count One lists dozens of overt acts that demonstrate the defendants' intent to participate in the charged conspiracy.  See United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992) (challenged indictment must be read "in its entirety").  As such, the defendants' motion to dismiss Count One as factually insufficient must be denied.

For similar reasons, Count Three also is factually sufficient.  It tracks the language of Section 2332g and alleges the time, place and manner in which the defendants engaged in the charged conspiracy to acquire and use anti-aircraft missiles.[6]  As such, Count Three need not recite (although the overt acts make plain) the Government's evidence that will support the statutory allegation.  Alfonso, 143 F.3d at 776.

The defendants also claim that they are exempt from the charge in Count Three by virtue

_____

[6]  Section 2332g provides, in relevant part, that it shall be unlawful for any person to "produce, construct, otherwise acquire, transfer directly or indirectly, receive, possess, import, export, or use, or possess and threaten to use (A) an explosive or incendiary rocket or missile that is guided by any system designed to enable the rocket or missile to (i) seek or proceed toward energy radiated or reflected from an aircraft or toward an image locating an aircraft; or (ii) otherwise direct or guide the rocket or missile to an aircraft; (B) any device designed or intended to launch or guide a rocket or missile described in subparagraph (A); or (C) any part or combination of parts designed or redesigned for use in assembling or fabricating a rocket, missile, or device described in subparagraph (A) or (B)."

16

of 18 U.S.C. § 2332g(a)(3)(A), which excludes from prosecution conduct "by or under the

authority of the United States or any department or agency thereof."  The claim is frivolous.  As

the Indictment makes clear, the defendants' conduct was not authorized by the United States, as

contemplated by Section 2332g(a)(3)(A).  Although the CSs were acting at the direction of the

DEA, the evidence will demonstrate that the defendants believed those individuals were acting

on behalf of the FARC – not the DEA or any other U.S. Government component – and

specifically for the purpose of killing Americans.  Accordingly, the motion to dismiss should be

denied.

**III.    18 U.S.C. § 1114 Applies Extraterritorially To The Conduct Of Foreign Nationals**

The defendants move to dismiss Count Two on the ground that the underlying statute, 18

U.S.C. § 1114, does not apply to extraterritorial conduct of foreign nationals.[7]  See Moreno Br. 5-

8.  There is no merit to this claim.

**A.    Applicable Law**

Section 1114 provides in relevant part:

> Whoever kills or attempts to kill any officer or employee of the
> United States or of any agency in any branch of the United States
> Government (including any member of the uniformed services)
> while such officer or employee is engaged in or on account of the
> performance of official duties, or any person assisting such an
> officer or employee in the performance of such duties or on
> account of that assistance, shall be punished . . . .

---

[7]  The defendants also argue that the application of 18 U.S.C. § 1114 to them violates the
Due Process Clause of the Fifth Amendment because the nexus between the defendants and the
United States here is insufficient.  See Moreno Br. 8-10.  The Government's response to the
defendants' nexus argument may be found in Section I supra.

18 U.S.C. § 1114.[8]

The power of Congress to penalize extraterritorial conduct is clear.  See EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991); United States v. Evans, 667 F. Supp. 974, 980 (S.D.N.Y. 1987) (citations omitted ).  Whether a particular statute has extraterritorial application is a question of congressional intent.  The two courts to have considered this question with respect to Section 1114 – this Court and the Eleventh Circuit – have held that Congress intended the statute to have extraterritorial application.  See Bin Laden, 92 F. Supp. 2d at 202-203; United States v. Benitez, 741 F.2d 1312, 1317 (11th Cir. 1984).

In Bin Laden, where the defendants were charged under Section 1114, among other statutes, in connection with their roles in the 1998 bombings of the U.S. embassies in Kenya and Tanzania, Judge Sand concluded that "the offense described by Section 1114 is 'exactly the type of crime that Congress must have intended to apply extraterritorially' – irrespective of the nationality of the offender."  Bin Laden, 92 F. Supp. 2d at 202 (quoting United States v. Benitez, 741 F.2d at 1317).  Judge Sand reasoned that three factors supported the extraterritorial application of Section 1114:  (1) the statute "is explicitly intended to protect vital United States interests;" (2) a "significant number" of U.S. officers and employees perform their official duties in foreign countries, and (3) foreign nationals therefore have at least the same level of opportunity as U.S. nationals to kill or attempt to kill U.S. officers and employees.[9]  Id.; see also

---

[8]  Section 1117 prohibits conspiring to violate Section 1114, among other statutes.  See 18 U.S.C. § 1117.

[9]  Consistent with the reasoning in Bin Laden, courts have routinely upheld the extraterritorial application of a wide variety of penal statutes that, like Section 1114, proscribe crimes involving a threat to U.S. interests, and often in cases of foreign nationals who operated

(continued...)

Benitez, 741 F.2d at 1313-17 (affirming the extraterritorial application of Section 1114 to a

Colombian citizen charged with conspiring to murder two DEA agents in Colombia).

**B.    Discussion**

Section 1114 was clearly intended by Congress to apply extraterritorially, as Judge Sand

and the Eleventh Circuit have found.  Neither the title nor the text of Section 1114 suggests that

the protection afforded to  United States government personnel (and those assisting United States

government personnel) by the statute is only national in scope.[10]  Furthermore, as Judge Sand

found,  a "significant number" of United States officers and employees perform their official

duties in foreign countries, and foreign nationals therefore have at least the same level of

opportunity as United States nationals to kill or attempt to kill United States officers and

employees.  See Bin Laden, 92 F. Supp. 2d at 202.

"'[T]he locus of the conduct is not relevant to the end sought by the enactment' of [the]

statute, and [the] statute prohibits conduct that obstructs the functioning of the United States

---

[9](...continued)
entirely outside U.S. territory.  See United States v. Vasquez-Velasco, 15 F.3d 833, 839-41 (9th
Cir. 1994) (upholding application of 18 U.S.C. § 1959 – violent crime in aid of racketeering – to
a foreign national for the murder in Mexico of two Americans who were believed to be, but were
not, DEA agents); United States v. Felix-Gutierrez, 940 F.2d 1200, 1204-05 (9th Cir. 1991)
(upholding application of 18 U.S.C. § 3 –  accessory after the fact – to a foreign national for
being an accessory after the fact to the murder of a DEA agent in Mexico);  Benitez, 741 F.2d at
1317 (11th Cir. 1984) (in addition to upholding application of 18 U.S.C. § 1114 to a foreign
national, upholding application of 18 U.S.C. § 2112 – proscribing theft of personal property of
the United States – to a foreign national who took property from DEA agents in Colombia);
United States v. Cotten, 471 F.2d 744, 750 (9th Cir. 1973) (upholding application of 18 U.S.C. §
641 – prohibiting theft of Government property – to U.S. citizen).

[10]  Similarly, there is nothing in the language of Section 1114 that intimates different
treatment of United States and foreign nationals.  "Whoever kills or attempts to kill any officer or
employee of the United States."  18 U.S.C. § 1114 (emphasis added).

government." Vasquez-Velasco, 15 F.3d at 839 (quoting United States v. Cotten, 471 F.2d at 751).  Therefore, there is no requirement for "an affirmative statement of congressional intent in order to find that [the] statute applies extraterritorially," and "it is reasonable to infer congressional intent to reach crimes committed abroad." Vasquez-Velasco, 15 F.3d at 839 n. 4.

Accordingly, it is not surprising that every court that has considered the extraterritoriality of statutes, like this one, which have been invoked to penalize the murder of American government personnel abroad, have held them to be applicable outside the territory of the United States.[11]  See Vasquez-Velasco, 15 F.3d at 841; Benitez, 741 F.2d at 1316; Bin Laden,  92 F. Supp. 2d at 202-203.  Accordingly, the defendants' motion to dismiss Count Two should be denied.[12]

## IV.    18 U.S.C. § 2339B Does Not Require Specific Intent To Further The Illegal Activities Of A Foreign Terrorist Organization

The defendants also move to dismiss Count Four on the ground that the underlying statute, 18 U.S.C. § 2339B, is unconstitutional on its face and as applied.  See Moreno Br. 15-21. The defendants contend that Section 2339B violates the Due Process Clause of the Fifth Amendment because the statute does not require the Government to establish personal guilt

---

[11]   The defendants also claim that the enactment of 18 U.S.C. § 1119 supports their argument that the homicide statutes in Chapter 51 of Title 18 were not intended to apply extraterritorially.  See Moreno Br. 7 n.3.  The defendants' argument fails because the enactment of Section 1119 actually confirms Congress' intent that some of the homicide provisions in Title 18 are designed to have extraterritorial application.

[12]   Defendants' reliance upon a presumption against extraterritorial jurisdiction is misplaced because United States v. Bowman, 260 U.S. 94, 98 (1922), instructs that the presumption does not apply to the class of statutes, like Section 1114, that are not logically dependent on the location of the violation for the Government's jurisdiction and that are enacted pursuant to the right of the government to defend itself.  See Bin Laden, 92 F. Supp. 2d at 194.

through proof of a specific intent to further the illegal activities of the designated foreign terrorist

organization.  Because the clear weight of existing judicial authority, both in this Court and in

other circuits, has rejected this argument, this claim should be denied.

**A.     Applicable Law**

Section 2339B provides in relevant part that:

> Whoever, within the United States or subject to the jurisdiction
> of the United States, knowingly provides material support or
> resources to a foreign terrorist organization, or attempts or
> conspires to do so [is guilty of a crime.]  To violate this
> paragraph, a person must have knowledge that the organization
> is a designated terrorist organization . . ., that the organization
> has engaged or engages in terrorist activity . . ., or that the
> organization has engaged or engages in terrorism . . . .

18 U.S.C. § 2339B.  Section 2339B therefore requires that a defendant knowingly provide

"material support," and that he know that the recipient of his support has been designated as a

foreign terrorist organization or is an entity that engages in the type of terrorist activity sufficient

to merit designation.  See Humanitarian Law Project v. United States Dep't of Justice, 352 F.3d

382, 401-03 (9th Cir. 2003) (specifically adopting the second requirement as necessary to

protect the statute against constitutional challenge), vacated on reh'g en banc, 393 F.3d 902 (9th

Cir. 2004).  Congress intended § 2339B to prohibit the provision of support to foreign terrorist

organizations, to the "fullest possible basis, consistent with the Constitution."  Antiterrorism

and Effective Death Penalty Act, Pub. L. No. 104-132, § 301(b), 110 Stat. 1274 (1996).

Since its enactment in 1996, Section 2339B has withstood a variety of constitutional

challenges, including the very argument that the defendants advance here.  Indeed, as Moreno

acknowledges in his brief, both Judge Preska and Judge Stein of this Court (and every other

21

court to have addressed the issue save one) have held that Section 2339B comports with the

Fifth Amendment without requiring proof of the defendant's specific intent to further the illegal

activities of the foreign terrorist organization.  See United States v. Sabir, No. S4 05 Cr. 673

(LAP), 2007 WL 1373184, *10 (S.D.N.Y. May 10, 2007) (Preska, J.); United States v. Paracha,

No. 03 Cr. 1197 (SHS), 2006 WL 12768, *25-30 (S.D.N.Y. Jan. 3, 2006) (Stein, J.).[13]

Relying upon the Ninth Circuit's analysis in Humanitarian Law Project, Judge Stein

reasoned that Section 2339B's "focus on conduct rather than association or membership" with a

particular group alleviates any concerns regarding the Fifth Amendment due process

requirement of personal guilt.[14]  Paracha, 2006 WL 12768, at *28 (citing Humanitarian Law

Project, 352 F. 3d at 396-97).  "By criminalizing the conduct of providing material support to

any organization that is properly designated a foreign terrorist organization, and not the mere

association with those organizations, the statute properly focuses on the personal action of the

---

[13]    See also Humanitarian Law Project v. United States Dep't of Justice, 352 F.3d at 401-03; United States v. Warsame, 537 F. Supp. 2d 1005, 1020-22 (D. Minn. Mar. 12, 2008); United States v. Abdi, 498 F. Supp. 2d 1048, 1060-61 (S.D. Ohio 2007); Strauss v. Credit Lyonnais, No. 06 Cv. 702 (CPS), 2006 WL 2862704, *13-14 (E.D.N.Y. Oct. 5, 2006); United States v. Assi, 414 F. Supp. 2d 707, 720-21 (E.D. Mich. 2006); United States v. Marzook, 383 F. Supp. 2d 1056, 1068-70 (N.D. Ill. 2005).  But see United States v. Al-Arian, 329 F. Supp. 2d 1294, 1339 (M.D. Fla. 2004) (construing Section 2339B to require that the defendant specifically intend that the support provided be used to further illegal activities of the foreign terrorist organization at issue).

[14]    The Supreme Court first identified the due process "personal guilt" requirement in Scales v. United States, 367 U.S. 203 (1961), which addressed a Fifth Amendment challenge to the "membership clause" of the Smith Act.  The Smith Act criminalized membership in Communist organizations that advocated the violent overthrow of the government, and the defendant in Scales claimed that the clause violated due process by imposing guilt by association.  The Scales Court concluded that a statute, which prohibits membership, without more, in an organization, offends due process if it "impermissibly imputes guilt to an individual merely on the basis of his associations and sympathies, rather than because of some concrete, personal involvement in criminal conduct."  Id. at 220.

individual." Id.  As a result, Section 2339B does not proscribe associating with a particular

organization; it proscribes personally providing material support.  See Boim v. Quranic Literacy

Institute, 291 F.3d 1000, 1026 (7th Cir. 2002) ("Conduct giving rise to liability under section

2339B, of course, does not implicate associational or speech rights."); United States v.

Warsame, 37 F. Supp.2d at 1021 ("§ 2339B requires that the prosecution show a donor's

'concrete, personal involvement in criminal conduct,' rather than his mere association with it")

(quoting Scales v. United States, 367 U.S. at 220); see also H.R. Rep. No. 104-383, at 44 (1995)

(stating that the ban on material support "does not attempt to restrict a person's right to join an

organization.  Rather, the restriction only affects one's contribution of financial or material

resources to a foreign organization that has been designated as a threat to the national security of

the United States.").

## B.    Discussion

The defendants' claim that Section 2339B runs afoul of the Due Process Clause

should be denied.  Their reliance upon United States v. Scales is misplaced, and their reasoning

has been rejected by every court but one to have considered it.

Section 2339B does not implicate any Scales concern because it does not criminalize

guilty by association.  The Scales Court was confronted with a statute that proscribed

membership in a particular type of organization, and concluded that such a statute would pass

Fifth Amendment muster only where the elements for a violation included not only active

membership, but also a specific intent to further the illegal goals of the criminal organization.

See United States v. Scales, 367 U.S. 203, 225 (1961); see also Sawyer v. Sandstrom, 615 F.2d

311, 317 (11th Cir. 1980) ("Scales thus teaches that knowing association with a group cannot be

23

made a punishable act just because some of the group members are engaged in criminal conduct."). That analysis – referred to in Scales as the "personal guilt" standard – is inapplicable to statutes like Section 2339B, which criminalize conduct in support of an organization, as opposed to mere membership. Boim v. Quranic Literary Institute, 291 F.3d at 1026 ("[The cases concerning personal guilt] we have discussed supra apply to situations where the government seeks to impose liability on the basis of association alone, i.e., on the basis of membership alone or because a person espouses the views of an organization that engages in illegal activities.").

Even if Section 2339B were subject to a Scales analysis, however, an interpretation of the statute's knowledge requirements would still be sufficient to ensure "personal guilt." A contributor who knowingly provides material support to an organization that he knows is a terrorist organization provides that organization with something that can further its terrorist goals directly or indirectly (by freeing up other resources), whether he specifically intends to further those activities or not. That is sufficient to hold him "personally guilty," and it does not offend notions of fairness to hold such a person criminally responsible.[15] See Paracha, 2006 WL 12768, at *28.

---

[15] In contrast to Section 2339B, Section 2339A proscribes providing material support "knowing or intending that [it is] to be used" to commit terrorist activities. 18 U.S.C. § 2339A. As a result, "[s]ection 2339B – enacted two years after section 2339A – plainly excludes the explicit mens rea requirement to further illegal activities, and the legislative history indicates that this exclusion was purposeful and was designed to 'close a loophole left by § 2339A.'" Paracha, 2006 WL 12768, at *28 (citations omitted); see also United States v. Marzook, 383 F. Supp. 2d at 1070-71 ("the additional [scienter] requirement finds no basis in the statute's language, and "clashes with Congress's intent").

24

Therefore, with respect to Count Four where the defendants are charged with agreeing to provide the FARC with millions of dollars worth of weapons to be used to kill Americans, while knowing that the FARC had engaged and was engaging in terrorist activity, there can be no question that the Government has alleged "concrete, personal involvement in criminal conduct" by the defendants, and not their mere association with it. Scales, 367 U.S. at 220. Section 2339B is accordingly neither unconstitutional on its face, nor as applied to these defendants.

Finally, the defendants' reliance on the Middle District of Florida's decision in United States v. Al-Arian, 308 F. Supp. at 1338-39, does not change the result. Every court to have addressed the holding in Al-Arian regarding Section 2339B has found it unpersuasive because the reasoning runs contrary to the plain language and the intent of the statute. See Paracha, 2006 WL 12768, at *25 ("This additional requirement of an intent to further the unlawful activities of the foreign terrorist organization is not consistent with the statute . . . ."); United States v. Warsame, 537 F. Supp. 2d at 1021 (noting that every court to consider the specific intent argument under Section 2339B has declined to follow the reasoning of Al-Arian); Strauss, 2006 WL 2862704, at *13 (same); United States v. Assi, 414 F. Supp. 2d at 724 (same); Marzook, 383 F. Supp. 2d at 1070 (same); see also United States v. Abdi, 498 F. Supp. 2d at 1061 (describing the Al-Arian decision as "aberrant"). Because an interpretation of Section 2339B that does not require specific intent is consistent with the Constitution, and because the addition of specific intent converts the statute from a general intent statute and thereby does not provide it a reach on the "fullest possible basis" as Congress intended, this Court should also reject the additional specific intent requirement adopted by the Al-Arian court.

**V.    The Motion To Remove Surplusage Should Be Denied**

The defendants also seek removal of paragraphs 1 through 8 of the Indictment, which describe the background of the conspiracy to kill U.S. nationals charged in Count One, contending that these allegations are "misleading and prejudicial" and improperly "expand the case." (See al Ghazi Br. at 24). The Second Circuit has repeatedly held that allegations in an indictment concerning facts that are admissible and relevant to the charges should not be stricken. "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990) (emphasis added). Thus, "if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." United States v. DePalma, 461 F. Supp. 778, 797 (S.D.N.Y. 1978). As Judge Sand has observed, "[a]lthough the Federal Rules of Criminal Procedure grant the Court authority to strike surplusage from an indictment . . . , [i]t has long been the policy of courts within the Southern District to refrain from tampering with indictments." Bin Laden, 91 F. Supp. 2d at 621 (citations omitted).

The defendants' contentions should be rejected. First, it is premature to address this motion now, before the Court has even seen the Government's evidence. "The defendant may renew [the] motion after the presentation of the government's case if it fails to offer proof of [the indictment's allegations.]" See United States v. Scarpa, 913 F.2d 993, 1011 (2d Cir. 1990) (quoting Scarpa district court's adoption of this procedural approach to surplusage motion). There is no risk of unfair prejudice to the defendants from such an approach because the Indictment will not be read to the jury until after the evidentiary portion of the trial has ended.

26

In any event, the motion is without merit. Paragraphs 1 through 5 provide background to the conspiracy to kill U.S. nationals by discussing the roles of the various defendants in the illicit arms trafficking business, their methods of operation, and their relationship with each other, all facts that establish means and methods of the charged conspiracies, in particular Count One. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (other acts evidence admissible because "it [was] inextricably intertwined with the evidence regarding the charged offense," and because "it [was] necessary to complete the story of the crime on trial"); United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) (other acts evidence admissible because it explained "how illegal relationships and mutual trust developed between co-conspirators"). Moreover, the allegations regarding the FARC contained in paragraphs 6 through 8 are relevant to Count One, as the defendants are charged with conspiring to kill Americans based on their agreement to sell lethal weapons to the FARC. Accordingly, the allegations which the defendants seek to remove as surplusage are relevant, and should not be removed.

**VI.    The Disclosure Of Predisposition Evidence**

The defendants request the Court to order the Government to disclose any predisposition evidence six weeks before trial, but in no event less than two weeks before trial. (See Moreno Br. at 24). The Government agrees to disclose any predisposition evidence, along with any Rule 404(b) evidence, four weeks before trial.

**VII.    Conclusion**

      For the reasons set forth above, the defendants' motions should be denied in their

entirety.

Dated:  May 5, 2008

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA

                                        United States Attorney

                                        s/ Boyd M. Johnson III

By:    _____

                                          BOYD M. JOHNSON III

                                        LESLIE C. BROWN

                                        BRENDAN R. MCGUIRE

                                        Assistant United States Attorneys

                                        (212) 637-2276/2638/2220

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following by U.S. mail and electronic mail on May 5, 2008:

Marc Agnifilo, Esq.
Brafman & Associates, P.C.
767 Third Avenue
New York, New York 10017
(212) 750-7800

Roger L. Stavis, Esq.
Gallet Dreyer & Berkey, LLP
845 Third Avenue, 8th Floor
New York, New York 10017
(212) 935-3131

s/ Boyd M. Johnson III

_____

Boyd M. Johnson III