S3 07 Cr. 354 (JSR)

# United States District Court
# Southern District of New York

---

**UNITED STATES OF AMERICA**
-against-
**MONZER AL KASSAR,**
a/k/a "Abu Munawar,"
a/k/a "El Taous,"
**TAREQ MOUSA AL GHAZI**, and
**LUIS FELIPE MORENO GODOY**
Defendants.

---

MEMORANDUM OF LAW

---

**GALLET DREYER & BERKEY, LLP**
*Attorneys for Luis Felipe Moreno Godoy*
845 Third Avenue, 8th Floor
New York, NY 10017
(212) 935-3131

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

ARGUMENT

      COUNT THREE MUST BE DISMISSED FOR
      FACIAL INSUFFICIENCY BECAUSE THE
      FACTUAL ALLEGATIONS FIT WITHIN THE
      "EXCLUDED CONDUCT" PROVISIONS
      OF THE STATUTE........................................................................................1

      18 U.S.C. § 1114 CANNOT BE APPLIED
      EXTRATERRITORIALLY CONSISTENT WITH DUE
      PROCESS BECAUSE THE ACTS OCCURRED OUTSIDE
      THE UNITED STATES AND THERE WAS AN
      INSUFFICIENT "NEXUS" WITH THE UNITED STATES ........................5

      18 U.S.C. § 2339B VIOLATES THE DUE PROCESS CLAUSE
      BECAUSE IT FAILS TO ALLEGE THE SPECIFIC INTENT
      TO FURTHER THE ILLEGAL ACTIVITIES OF THE
      FOREIGN TERRORIST ORGANIZATION ................................................7

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

United States v. Al-Arian,
329 F.Supp.2d 1294 (M.D. Fla. 2004)...........................................................................................9

United States v. Alfonso,
143 F.3d 772, 776 (2d Cir. 1998) ..................................................................................................2

United States v. Archer,
486 F.2d 670, 681 (2d Cir. 1973) ..................................................................................................6

United States v. Birney,
686 F.2d 102, 107 (2d Cir. 1982) ..................................................................................................7

United States v. Hess,
124 U.S. 483, 487 (1888)............................................................................................................2, 3

United States v. LaSpina,
299 F.3d 165, 177 (2d Cir. 2002) ..................................................................................................2

United States v. Paracha,
2006 WL 12768 (S.D. N.Y. 2006)(Stein, J.) .................................................................................7

United States v. Pirro,
212 F.3d 86 (2d Cir. 2000) .........................................................................................................2, 3

United States v. Sabir,
2007 WL 1373184 (S.D.N.Y.2007)(Preska, J.)............................................................................7

United States v. Scales,
367 U.S. 203, 224-225 (1961) .......................................................................................................8

United States v. Yousef,
327 F.3d 56, 111 (2d Cir.), cert. denied, 540 U.S. 933 (2003) .....................................................5

**Statutes**

18 U.S.C. § 2332g......................................................................................................................3

18 U.S.C. § 1956(a)(3) ...............................................................................................................4

18 U.S.C. § 2332g(a)(3)(A).........................................................................................................3

18 U.S.C. § 1114........................................................................................................................5

18 U.S.C. § 1119........................................................................................................................5

18 U.S.C. § 2339B..............................................................................................................7, 8, 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

MONZER AL KASSAR,
a/k/a "Abu Munawar," "El Taous,"
TAREQ MOUSA AL GHAZI, and
LUIS FELIPE MORENO GODOY,

           Defendants.

------------------------------------------------------X

S3 07 CR. 354 (JSR)

## REPLY MEMORANDUM OF LAW

    This Memorandum of Law is submitted in REPLY to the Government's Memorandum in Opposition to Defendants' Motions to Dismiss and for Other Relief. This Memorandum will address only those issues raised by the Government's Memorandum, which we believe merit additional argument. As to all other issues, we believe they are adequately addressed by our initial Memorandum and rely upon that submission as well as those of our co-counsel.

## ARGUMENT

## COUNT THREE MUST BE DISMISSED FOR FACIAL INSUFFICIENCY BECAUSE THE FACTUAL ALLEGATIONS FIT WITHIN THE "EXCLUDED CONDUCT" PROVISIONS OF THE STATUTE

In response to our motions to dismiss for facial insufficiency, the Government argues that an indictment is sufficient if it "... tracks the language of the statute charged, which is all the Second Circuit requires." Government's Memorandum at p. 15; see, United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998). Well...not exactly. The Government has confused two related, though different, principles. An indictment need do nothing more than "track the language" of a statute, but only with regard *to the elements of the crime*, which the Government can cut and paste from the U.S. Code. But the indictment must include more because it is constitutionally required to inform the defendant of the facts underlying the offense. For this reason, it must also include *factual allegations*, the requisite "...statement of the essential facts constituting the offense charged...." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002). Obviously, the factual allegations are unique for every crime and cannot be cut and pasted from the U.S. Code. It is in this regard, as made clear in our initial memorandum, that the counts are deficient.

In United States v. Pirro, 212 F.3d 86 (2d Cir. 2000), the Second Circuit employed the oft quoted "track the language of the statute," but also "recognized a limitation on this practice." Id. at 92-93. Quoting from United States v. Hess, 124 U.S. 483, 487 (1888), the Circuit explained:

> "Undoubtedly, the language of the statute may be used in the general description of an offense, but *it must be accompanied with such a statement of the facts and circumstances* as will inform the accused of the specific offense, coming under the general description, with which he is charged."

United States v. Pirro, supra, at 93, quoting United States v. Hess, supra, at 487 (emphasis added).

Clearly then, the Government's "tracking the language of the statute" argument is quite beside the point. Our insufficiency claim is based not on the statutory allegations, but rather on the factual allegations underpinning the statutory elements. And, in this regard, Counts One and Three must be dismissed as facially insufficient.

Focusing specifically on Count Three, there exists a much larger problem. The factual allegations demonstrate unequivocally that the Government cannot prosecute the defendants under 18 U.S.C.§ 2332g, "Missile Systems Designed To Destroy Aircraft." In urging the dismissal of this count in our initial memorandum of law, we cited to the specific terms of the statute and the specific factual allegations, demonstrating that the criminal conduct was statutorily "excluded" from prosecution because it was committed *"...under the authority of the United States or any department or agency thereof..."* 18 U.S.C. § 2332g(a)(3)(A). Since, according to the factual allegations of the indictment, the entire conspiracy was conceived, directed and supervised by the Drug Enforcement Administration, it was self evident that the "criminal acts" fit squarely within the statutory "exclusion."

Instead of confronting this compelling argument on the law, logic, or facts, the Government merely dismisses it out of hand as "frivolous." It is the Government's response, however, which can be more appropriately characterized as "frivolous." The Government first claimed that *"...the Indictment makes clear, the defendants' conduct was not authorized by the United States, as contemplated by 18 U.S.C. § 2332g(a)(3)(A)."* Government's Memorandum at p. 17 (emphasis added). Following such a bold pronouncement, it was only natural to anticipate a demonstration of precisely what the Congress had *"contemplated"* and exactly how the *"defendants' conduct"* could not have been *"authorized"* in light of the legislative intent. But the Government provided nothing;

3

no legislative history; no precedent; nothing but its bold assertion. It was an assertion which just so happened to fly in the face of the specific terms of the statute and the specific allegations of the indictment. Clearly, the DEA agents had "authorized" their informants to purchase the illegal weapons, and just as clearly the statute "excluded" such conduct.

The Government's next line of argument is equally specious: "*...the defendants **believed** those individuals were acting on behalf of the FARC - not the DEA or any other U.S. Government component....*" Government's Memorandum at p. 17 (emphasis added). The statute includes no provision canceling the "exclusion" when the defendant truly *"believes"* the false representations made by government informants. As pointed out in our initial memorandum of law, the money laundering statute includes such a provision,[1] and perhaps some future Congress will decide to amend this statute to include one as well. But for now, the stubborn fact remains that the statute has no provision canceling out the "exclusion" where the defendant *"believed"* representations made by informants. The Government's quixotic attempt to create one out of whole cloth must fail. The *"beliefs"* of these defendants have no relevance whatsoever. The indictment reflects that the informants acted under the authority of the DEA; the statute "excludes" such conduct; and that is all that matters. For these reasons, as well as those contained in our initial memorandum of law, Count Three must be dismissed.

---

[1] The so called "sting" provision of the money laundering statute, 18 U.S.C. § 1956(a)(3), includes within the ambit of the statute "property represented to be the proceeds of the specified unlawful activity," and goes on to define "represented" as including "any representation made by a law enforcement officer or by another person at the direction of a Federal official...."

## 18 U.S.C. § 1114 CANNOT BE APPLIED EXTRATERRITORIALLY CONSISTENT WITH DUE PROCESS BECAUSE THE ACTS OCCURRED OUTSIDE THE UNITED STATES AND THERE WAS AN INSUFFICIENT "NEXUS" WITH THE UNITED STATES

In our initial memorandum of law, we argued on a variety of grounds that 18 U.S.C. § 1114 could not be applied to criminal acts which occurred outside the United States.[2] We relied on United States v. Yousef, 327 F.3d 56, 111 (2d Cir.), cert. denied, 540 U.S. 933 (2003), for the legal principle that "Due Process" requires the existence of a "sufficient nexus" between the criminal acts and the United States in order for extraterritorial jurisdiction to apply. Id. The Government also relies on United States v. Yousef, supra, but claims that the facts of that case are indistinguishable from those presented here. We beg to differ.

Ramzi Yousef was one of the world's most notorious terrorists. He was the master mind of the 1993 World Trade Center bombing and was arrested while actively planning to blow up U.S. flagged aircraft and aircraft carrying passengers destined for the United States. Felipe Moreno Godoy is no Ramzi Yousef.[3] He posed no real danger to the United States and merely responded to a hypothetical DEA orchestrated scenario regarding the purchase of illegal weapons. The only "nexus" with the United States was that it served as the base of operations for the DEA Agents who conceived and planned the hypothetical "sting" operation on foreign soil. The hypothetical operation

---

[2] In our initial memorandum [Page 7, n.3], we noted that while Congress enacted 18 U.S.C. § 1114 in 1948 without any provision for extraterritorial jurisdiction, it remedied the jurisdictional problem by enacting an entirely new statute, 18 U.S.C. § 1119, "Foreign Murder of United States Nationals." The Government counters that this "...actually confirms Congress' intent that some of the homicide provisions in Title 18 are designed to have extraterritorial application." Government Memorandum at p. 20 n.11. If that were in fact the case, then Congress would have had no need to pass an entirely new statute addressing extraterritorial conduct already addressed in existing statutes.

[3] A recent newspaper article, "Inside a Case Against 2 Men Who Sold Arms," New York Times 5/15/08, page B1, refers to Luis Felipe Moreno Godoy as Monzer Al Kassar's "Chilean Accountant."

5

never posed any danger of harming the United States, it's citizens, or its national interests. And the fact that the Government informants were "play acting," surely distinguished them from Ramzi Yousef and his mass murdering cohort.

The sole basis for the Government's claim of extraterritorial jurisdiction was the tale the informants were directed to tell about the FARC. But this was too thin a reed on which to base extraterritorial jurisdiction. See, e.g. United States v. Archer, 486 F.2d 670, 681 (2d Cir. 1973) A Spanish citizen should not be hauled across the ocean from Europe, where all of acts occurred and all of the witnesses reside, merely because the DEA fabricated a story line that involved the U.S. military in Colombia. It is an "insufficient nexus" to force these defendants to stand trial here in the United States. For these reasons, and those contained in our initial memorandum of law, Count Two, as well as the other counts, must be dismissed.

6

## 18 U.S.C. § 2339B VIOLATES THE DUE PROCESS CLAUSE BECAUSE IT FAILS TO ALLEGE THE SPECIFIC INTENT TO FURTHER THE ILLEGAL ACTIVITIES OF THE FOREIGN TERRORIST ORGANIZATION

In our initial memorandum of law, we apprised the Court of two Southern District of New York cases rejecting our argument that 18 U.S.C. § 2339B's failure to include as an element the specific intent to further the illegal activities of the Foreign Terrorist Organization, renders the statute unconstitutional.  See, e.g. United States v. Sabir, 2007 WL 1373184 (S.D.N.Y. 2007) (Preska, J.); United States v. Paracha, 2006 WL 12768 (S.D.N.Y. 2006) (Stein, J.). Not surprisingly, the Government emphasizes these decisions in urging this Court to uphold the constitutionality of the statute.  In this regard it must be noted that, according to the Second Circuit: "Judges of coordinate jurisdiction are not bound by each others rulings and are free to disregard them if they so choose." United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982). This Court should reject the decisions of Judges Preska and Stein because they are incorrect as a matter of law.

Indeed, since the filing of our initial memorandum of law, we have been provided with a high profile example of just how wrong those decisions are, and the danger this statute poses to fundamental constitutional rights.  As the Court may be aware, in early April, former President and Nobel Peace Prize Laureate, Jimmy Carter, held a series of highly publicized meetings with the senior leadership of Hamas, an organization designated by the State Department as a "Foreign Terrorist Organization."  As a former President, he receives State Department briefings in connection with his world travels, and surely was aware both that the State Department had designated Hamas a terrorist organization and that the organization was responsible for waging a terrorist jihad against innocent civilians.  Just as surely, President Carter rendered material support to Hamas by legitimizing the terrorist organization, strengthening its position in relation to its rival, the

7

Palestinian Authority, publicizing its cause, and helping to spread its message throughout the western world. Clearly, President Carter's interactions with Hamas included all of the requisite elements of the crime of "Providing Material Support Or Resources to Designated Foreign Terrorist Organizations" under 18 U.S.C. § 2339B.

This actual circumstance illustrates the fundamental constitutional problem posed by this statute. The statute assigns criminal liability based on acts committed by a third party, i.e. the "Foreign Terrorist Organization," without a showing of personal guilt. Such "guilt by association" has been held to violate the "Due Process Clause" of the Fifth Amendment. See United States v. Scales, 367 U.S. 203, 224-225 (1961). President Carter is subject to prosecution not for his assistance to Hamas, which was clearly not intended to further its terrorist mission, but for the terrorist acts committed by Hamas.

For its part, the Government claims that this is not "guilt by association," because the statute criminalizes a defendant's conduct rather than his associations. According to the Government:

> "A contributor who knowingly provides material support to an organization that he knows is a terrorist organization provides that organization with something that can further its terrorist goals directly or indirectly (by freeing up other resources), whether he specifically intends to further those activities or not. That is sufficient to hold him 'personally guilty,' and it does not offend notions of fairness to hold such a person criminally responsible."

Government's Memorandum at p. 24.

But didn't President Carter provide material support and further the terrorist goals of Hamas even without "specifically intending" to "further those activities?" Wouldn't it "offend notions of fairness" to hold the former President criminally responsible for his misguided adventure with the leadership of Hamas? This very prominent example of "material support" completely undermines

8

the argument relied on by the Government, and those courts which have upheld the statute, that it punishes action rather than mere association. As we have previously argued, this is a false dichotomy because association necessarily involves some degree of action. For this reason, a statute like this one must require specific intent to further the illegal or terrorist activities of the Foreign Terrorist Organization. See United States v. Al-Arian, 329 F.Supp.2d 1294 (M.D. Fla. 2004). That would insure against the prosecution of President Carter, and others like him, who render assistance, but without the specific intent to further terrorism. Unless and until 18 U.S.C. § 2339B includes such a specific intent provision it will fail to pass constitutional muster. For that reason, as well as those contained in our initial memorandum of law, Count Four must be dismissed.

## CONCLUSION

## FOR THE FOREGOING REASON, AS WELL AS THOSE CONTAINED IN OUR INITIAL MEMORANDUM OF LAW, THE RELIEF REQUESTED SHOULD BE GRANTED IN ALL RESPECTS

Respectfully submitted,

**GALLET, DREYER & BERKEY, LLP**
*Attorneys for Defendant Moreno-Godoy*
845 Third Avenue - 8th Floor
New York, New York 10022
(212) 935-3131
By:

_____/s/_____
Roger L. Stavis

00159924.DOC