# APPENDIX OF UNREPORTED CASES

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 486735 (S.D.N.Y.)
(Cite as: 2005 WL 486735 (S.D.N.Y.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
UNITED STATES OF AMERICA
v.
Yitzchok GROSSMAN, a/k/a/ "Yitz Grossman," and Paul Stark, Defendants.
No. S2 03 CR. 1156(SHS).

March 2, 2005.

OPINION

STEIN, J.

*1 Defendant Paul Stark moves this Court pursuant to Fed.R.Crim.P. 15(a) for an order permitting him to depose a proposed defense witness in Canada. As set forth more fully below, the Court grants the motion because Stark has shown that "exceptional circumstances" exist. Specifically, the witness is unavailable to testify at trial, his testimony is material to Stark's defense and is non-cumulative, and the deposition is in the interest of justice.

I. Background

Paul Stark is charged in a three-count indictment with conspiracy to commit securities fraud, wire fraud, and commercial bribery; substantive securities fraud; and substantive wire fraud. The government alleges that between April and November of 2003, Stark and his codefendant Yitzchok Grossman agreed to bribe a hedge fund manager to buy shares of a corporation called New York Health Care ("NYHC") in order to artificially increase the price of NYHC stock. At the time of the alleged offenses, Stark was president of one of NYHC's two operating divisions, a member of NYHC's board of directors, and a shareholder.

The government asserts that Stark conspired to bribe the hedge fund manager-- who turned out to be a government undercover agent--to purchase large blocks of NYHC stock in exchange for warrants to purchase 500,000 shares of NYHC stock at $2.50 per share. The warrants were exercisable within one year in two tranches of 250,000 shares each. According to the government, if the warrants were exercised while the share price was artificially inflated by the hedge fund manager's purchase of NYHC stock, the manager would make a profit of $1.75 million.

According to the alleged scheme, the warrants, however, were not to be issued directly to the hedge fund manager. Instead, the government contends that Stark and Grossman created a Canadian entity named Corval International Inc. to which NYHC would issue the warrants, despite the fact that Corval had rendered no services in exchange. Corval would then either exercise the warrants and transfer the proceeds to the hedge fund or transfer the warrants themselves to the hedge fund to be exercised by it.

The government further alleges that in April of 2003 Grossman and Stark made materially false misrepresentations and omissions to NYHC's board of directors that caused the directors to issue the warrants to Corval, allegedly in consideration for Corval's financial consulting services. In November of 2003, the undercover operation ceased and Grossman and Stark were arrested.

In July of 2004, Stark's defense counsel met in Toronto with Mark Olshenitsky, the potential defense witness. Much to the contrary of the government's allegations, Olshenitsky allegedly claimed that Corval was his company and that the warrants were issued to Corval as legitimate payment for services that Olshenitsky had rendered to NYHC. (Aff. of Sheryl E. Reich dated Feb. 17, 2005 at ¶¶ 6-7). Olshenitsky claimed that he was formerly the co-owner of a patent on a drug to treat irritable bowel syndrome and that he and his partners had tried to commercially produce and market the drug, but fell into dispute. (Id.). Olshenitsky allegedly told Stark's counsel that Olshenitsky and his partners sold their interests in the patent to Grossman in exchange for shares in NYHC, with the agreement that NYHC would produce and market the drug. (Id.).

*2 Olshenitsky further claimed that he continued to render services to NYHC after selling his interest in the patent. (Id.). As compensation for these

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cr-00354-JSR   Document 43-3   Filed 07/07/2008   Page 3 of 5

Not Reported in F.Supp.2d                                                                                  Page 2
Not Reported in F.Supp.2d, 2005 WL 486735 (S.D.N.Y.)
(Cite as: 2005 WL 486735 (S.D.N.Y.))

continuing services, Olshenitsky allegedly negotiated warrants to purchase 500,000 shares of NYHC stock at $2.50 per share, exercisable within one year in two tranches of 250,000 shares each. (*Id.* at ¶ 7 & n. 1). Olshenitsky also stated that he negotiated the warrants in April of 2003 and continued to render services to NYHC until November of that year. (*Id.* at ¶ 7). At that point, NYHC suspended the warrants because of the arrests of Stark and Grossman, and Olshenitsky repeatedly contacted NYHC in order to persuade the company to reinstate the warrants before they expired. (*Id.*).

From July of 2004 until February of 2005, defense counsel maintained contact with Olshenitsky, who continually expressed his willingness to come to New York and testify on Stark's behalf at his trial. (Reich Aff. ¶¶ 8-12). However, beginning on February 13-- approximately two weeks ago--Olshenitsky stopped responding to defense counsel's e-mails and telephone calls. (*Id.* at 15). At one point, defense counsel managed to contact Olshenitsky's wife on the telephone, but she was evasive and simply said that Olshenitsky was "traveling." (*Id.*)

Last Tuesday, defense counsel again phoned Olshenitsky and left him a message but again received no return call. (Supplemental Aff. of Sheryl E. Reich dated Feb. 23, 2005 at ¶ 5). The next day defense counsel phoned Alan Gold, a Canadian attorney who previously had represented Olshenitsky, and asked Gold to contact Olshenitsky. (*Id.* at ¶ 6). Later that day, Gold, with Olshenitsky present, called defense counsel. (*Id.* at ¶ 7). During that call, Olshenitsky stated "unequivocally, that he would not voluntarily appear in New York at the trial of Paul Stark," despite defense counsel's offer to pay for Olshenitsky's flight, lodging, and incidental expenses. (*Id.* at 7-8).

II. Fed.R.Crim.P. 15(a)

Pursuant to Fed.R.Crim.P. 15(a), a court may allow a party to a criminal case to depose a prospective trial witness in order to preserve his testimony for trial "because of exceptional circumstances and in the interest of justice." Fed.R.Crim.P. 15(a). To demonstrate that exceptional circumstances exist, the "movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen,* 260 F.3d 68, 78 (2d Cir.2001).

Whether a witness is unavailable "is to be determined according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial." *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir.1984). "Moreover, the lengths to which the [movant] must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." *Id.*

*3 Courts may accept the assertions of counsel on the facts relating to unavailability, *United States v. Sindona,* 636 F.2d 792, 803-04 (2d Cir.1980); *United States v. Oudovenko,* 2001 WL 253027 at *1 (E.D.N.Y.2001), as long as those assertions are neither conclusory nor speculative, *Oudovenko,* 2001 WL 253027 at *2-3;*United States v. Chusid,* 2000 WL 1449873 at *1 (S.D.N.Y.2000).

As to materiality, "[i]t is not necessary that [the] defendant show the testimony will surely acquit him." *United States v. Bronston,* 321 F.Supp. 1269, 1272 (S.D.N.Y.1971). The testimony is material if it is "highly relevant to a central issue in the case...." *United States v. Drogoul,* 1 F.3d 1546, 1556 (11th Cir.1993).

In general, testimony "is necessary to prevent a failure of justice" when the witness is unavailable, his testimony is material, and there are no substantial countervailing factors militating against the taking of the deposition. *See, e.g.,Johnpoll,* 739 F.2d at 709;*see also*Drogoul,* 1 F.3d 1546, 1552-56;*United States v. Sun Myung Moon,* 93 F.R.D. 558, n .1 (S.D.N.Y.1982).

The decision to order the deposition rests within the district court's sound discretion, and the movant has the burden of establishing that he has met all three of the above factors. *Cohen,* 260 F.3d at 78. Even if those factors are satisfied, a court may properly deny the motion if the proposed testimony would be cumulative or consists of hearsay. *United States v. Dunseath,* 1999 WL 165703 at *1 (S.D.N.Y.1999); *United States v. Campbell,* 1998 WL 564376 at *1 (S.D.N.Y.1998).

III. Analysis

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 486735 (S.D.N.Y.)  
**(Cite as: 2005 WL 486735 (S.D.N.Y.))**

Page 3

The Court now turns to an analysis of each of the three factors that determine whether it should exercise its discretion to grant the Rule 15 motion.

A. Unavailability

The Court finds that Olshenitsky is unavailable based upon the following facts: (1) Olshenitsky is a resident of Canada and thus beyond the subpoena power of the court (Reich Aff. ¶ 6); (2) defense counsel maintained a seven month relationship with Olshenitsky during which he repeatedly expressed a willingness to testify in person at the trial (id. ¶¶ 7-12); (3) however, in mid-February 2005 Olshenitsky stopped responding to defense counsel's attempts to contact him via e-mail and telephone (id. at ¶ 15); (4) when defense counsel contacted Olshenitsky's wife, she acted evasively (id. ¶¶ 15-16); (5) in a further effort to contact Olshenitsky, defense counsel then contacted Alan Gold, a Canadian lawyer who had previously represented Olshenitsky (Reich Supplemental Aff. ¶¶ 6-7); (6) during a conversation between defense counsel, Mr. Gold, and Olshenitsky, Olshenitsky flatly and repeatedly refused to come to the United States to testify, stating that he was "very upset with New York Health Care" due to the cancellation of his warrants (id. ¶ 7); and (7) Olshenitsky persisted in his refusal to testify at trial despite defense counsel's offer to pay the cost of his flight, hotel, and incidentals (id. ¶ 8).

*4 Defense counsel has made a reasonable and good faith effort to produce Olshenitsky to testify at trial, scheduled to begin on April 4. Defense counsel maintained contact with Olshenitsky for a seven month period during which he stated he would come to New York to testify, and after Olshenitsky became unresponsive defense counsel made repeated efforts to contact him. Once defense counsel reached Olshenitsky, he specifically declined to appear in New York at the trial, despite defendant's offer to pay his travel expenses. Accordingly, Olshenitsky is unavailable within the meaning of Rule 15(a). Other courts have found witnesses unavailable in very similar circumstances. SeeJohnpoll, 739 F.2d at 707-10;Sindona, 636 F.2d at 802-04;United States v. Korolkov, 870 F.Supp. 60, 65 (S.D.N.Y.1994).

B. Materiality

Olshenitsky's testimony is material because it would challenge central aspects of the government's allegations. Specifically, Olshenitsky allegedly would assert that Corval was a legitimate enterprise that Olshenitsky operated, not an entity constructed as the vehicle for a bribe; that the warrants at issue were not a bribe to a hedge fund manager, but actually were payment to Olshenitsky for services he had rendered to NYHC; and that subsequent to NYHC's suspension of the warrants, Olshenitsky repeatedly claimed his legitimate ownership of the warrants and attempted to have the suspension lifted.

Moreover, Olshenitsky's testimony is not cumulative. Although the government claims that Stark is the best witness on the issue of whether he intended the warrants as payment for Olshenitsky's legitimate work, Olshenitsky can testify directly--in a way that Stark cannot even assuming that he testifies at his trial--about the work he did for NYHC, about Corval's existence as a legitimate enterprise, and about his own efforts to persuade NYHC to reinstate the warrants.

C. Preventing a Failure of Justice

The Court also finds that Olshenitsky's deposition is necessary to prevent a failure of justice. The government urges the Court to deny the motion on the basis of untimeliness. However, Olshenitsky just recently communicated his unwillingness to testify at trial and defense counsel made this motion expeditiously. There has been no bad faith on Stark's part and no showing that the timing of the deposition would prejudice the government. SeeDunseath, 1999 WL 165703 at *2.

Finally, the government asserts that foreign depositions are untrustworthy because they lack a realistic perjury sanction. However, courts routinely order the taking of foreign depositions when the witness is unavailable and his testimony is material, as is the case here. SeeDrogoul, 1 F.3d 1546;Johnpoll, 739 F .2d 702;Sindona, 636 F.2d 792;Korolkov, 870 F.Supp. 60;United States v. Marcos, 1990 WL 58825 (S.D.N.Y.1990); United Statesv. Ang, 1986 WL 8710 (W.D.N.Y.1986); Sun Myung Moon, 93 F.R.D. 558.

*5 Accordingly, the Court grants defendant's Rule 15 motion to depose Marc Olshenitsky in Canada in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2005 WL 486735 (S.D.N.Y.)
**(Cite as: 2005 WL 486735 (S.D.N.Y.))**

advance of trial because he is otherwise unavailable, his testimony would be material, and it is in the interest of justice.

Not Reported in F.Supp.2d, 2005 WL 486735 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.