UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-                                          S3 07 CR. 354 (JSR)

MONZER AL KASSAR,
TAREQ MOUSA AL GHAZI, and
LUIS FELIPE MORENO GODOY,

    Defendants.

------------------------------------------------------------X

## PRE-SENTENCE MEMORANDUM
## ON BEHALF OF DEFENDANT MORENO GODOY

                                                    **GALLET DREYER & BERKEY, LLP**
                                                    Attorneys for Defendant
                                                    Luis Felipe Moreno Godoy
                                                    845 Third Avenue, 8th Floor
                                                    New York, New York 10022
                                                    (212) 935-3131

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA,

       -against-                              S3 07 CR. 354 (JSR)

MONZER AL KASSAR and
LUIS FELIPE MORENO GODOY,

                Defendants.

---------------------------------------------------------X

## PRE-SENTENCE MEMORANDUM

### Introduction

       Luis Felipe Moreno Godoy was a loyal friend, confidante, and employee of international arms dealer, Monzer Al Kassar, the target of this multi-year "sting" operation. Treated like a member of the Al Kassar family, he lived with them in Marbella, Spain and, indeed, was largely responsible for the maintenance and operation of the residence, its grounds, and its large staff. He helped Monzer Al Kassar in everything he did including, based on the jury's verdict, the illegal arms conspiracy for which both men stand convicted. That conviction, and the Government's charging decision under the newly enacted Anti-Aircraft Missile Statute (18 U.S.C. Section 2332g) with its 25 year mandatory minimum sentence, virtually insure that this 60 year old father, grandfather, and first time offender, will die in a prison cell in what is to him a foreign country.

       This then is the harsh reality of the sentence this Court is about to impose. No matter what

00192965.WPD;1

this Court does, the sentence it imposes will be neither fair nor just in light of the circumstances of the offense and this offender. But the fact remains that the adjusted offense level of 66 calculated by the Pre-Sentence Report ("PSR") calls for even more than the draconian 25 year mandatory minimum sentence; it calls for a sentence of life imprisonment. While this may appear at first blush to be a distinction without a difference, the decisions this Court makes regarding the sentencing guidelines and its various enhancements and potential departures will have a significant impact on the conditions of Mr. Moreno Godoy's confinement. Accordingly, this Pre-Sentence Memorandum evaluates the issues under the sentencing guidelines as well as the factors under 18 U.S.C. Section 3553.

Factual Issues Under the Sentencing Guidelines

*Page 14, para. 52* Reflects that: "MORENO GODOY stated that AL KASSAR had buyers for the drugs in Syria." There is no evidence to support such a statement by this defendant. There is no allegation that Monzer Al Kassar was in the narcotics business and, more importantly, there exists no reference in either the trial record (T.760) or the transcript of the conversation, Government's Exhibit 41T, that Mr. Moreno Godoy ever made such a statement. We raised this objection with the Probation Department, which responded: "The Probation Office defers to the judgment of the Court with respect to what was or was not adduced during the trial." PSR at p. 34. We agree and respectfully request that the Court order this reference deleted.

*Page 26, para. 120* Reflects that: "According to ICE, the defendant is a citizen of Chile." Although the PSR includes that "[a]ccording to defense counsel, the defendant has dual citizenship," it does not formally acknowledge that Mr. Moreno Godoy is, in fact, a citizen of Spain. Indeed, at

the time of his arrest in this very case he had in his possession a Spanish passport. His Spanish passport was seized at that time. Accordingly, we ask the Court to amend this paragraph to reflect that Felipe Moreno Godoy is a citizen of Spain and has a valid Spanish passport.

Enhancements Under the Sentencing Guidelines

While we agree that the guidelines calculation must be based on the most serious count, Count 3, Conspiracy to Acquire and Use Anti-Aircraft Missiles, the PSR has added numerous enhancements to reach the stratospheric total offense level of 66. This is more than 20 levels above the maximum conceivable guidelines offense level of 43 which yields a sentence of life imprisonment.[1] As your Honor so aptly stated in a different case, the utilization of so many enhancements represents "...the kind of 'piling-on' of points for which the guidelines have frequently been criticized." United States v. Adelson, 441 F.Supp.2d 506, 510 (S.D. N.Y. 2006)(Rakoff, J.), aff'd, __ F.3d __, 2008 WL 5155341 (2d Cir. 2008).

*The Terrorism Enhancement: Section 3A1.4*

Section 3A1.4 provides for a "Terrorism" enhancement of 12 levels and an increase to Criminal History Category VI for certain enumerated crimes. While it is true that defendant was convicted for one of those crimes, Conspiracy to Provide Material Support for a Foreign Terrorist Organization (18 U.S.C. Section 2339B)(Count 4), this enhancement appears incongruous in light

---

[1] It should be noted, however, that Probation Department has recommended a 25 year sentence rather than the life sentence required by the sentencing guidelines. PSR at page 38 ("The Probation Office respectfully recommends that a total term of 25 years' imprisonment be imposed.")

of the circumstances of the instant case. First, this was a "sting" case in which there was no actual terrorist organization involved. The terrorist threat was fictional and the creation of the law enforcement agents who conceived and directed the "sting." Perhaps more importantly, as the Probation Department recognized and as the Government argued at trial, this was primarily a case about "greed" rather than "terrorism." Indeed, the PSR for co-defendant, Monzer Al Kassar, notes:

> "With respect to the defendant's motives for committing the instant offense, the Probation Office believes that he was primarily motivated by the prospect of substantial financial gain. The defendant's niece and defense counsel both contend that the defendant bears no animosity toward the United States or the American people. While this may very well be true, it appears that the defendant is, first and foremost, a pragmatist."

Al Kassar PSR at p. 44.

If Monzer Al Kassar was primarily motived by greed, where does this leave Felipe Moreno Godoy? He was a friend and employee, not a business partner. He stood to gain nothing from the contemplated arms deal. His motivation is even further removed from "terrorism."

Felipe Moreno Godoy, whose close family members reached the highest levels of the right wing Chilean Government, had no connections to the left wing FARC or, for that matter, any other terrorist organization. In fact, as he explained to the Probation Department:

> "To tell the truth I hate terrorists but the jury convicted me of terrorism. I am a person of the right, I am very conservative. My family cannot understand how come they accuse me of being a terrorist if I have my ideology of the right and have been accused of helping a leftist terrorist group."

PSR at p. 21, para. 84. The Probation Office further notes: "The defendant also recounted that there had been a terrorist bombing near his home in Santiago, Chile, which traumatized both him and his

family." Id. Neither the "terrorist" label nor the "terrorist" sentencing guideline enhancement appear to fit Felipe Moreno Godoy.

The Second Circuit has recognized that the utilization of this enhancement and its resultant exponential increase in punishment, may not be appropriate in every conviction under the enumerated offenses. In United States v. Meskini, 319 F.3d 88 (2d Cir. 2003), the Circuit held that the enhancement did not constitute impermissible "double counting." But, the Court was careful to note:

> "A judge determining that Section 3A1.4(b) over-represents
> 'the seriousness of the defendant's past criminal conduct or
> the likelihood that the defendant will commit other crimes'
> always has the discretion under Section 4A1.3 to depart
> downward in sentencing. U.S.S.G. Section 4A1.3."

Id. at 92. At counsel's suggestion, the PSR cites United States v. Meskini, 319 F.3d 88 (2d Cir. 2d Cir. 2003) and notes the potential for a downward departure on this ground. PSR at Page 35, para. 171.

Felipe Moreno Godoy has no criminal history whatsoever and no prior conduct which could otherwise justify elevating him to Criminal History Category VI. Having waited 60 years to commit this, his first crime, he poses zero likelihood of committing others. The sole reason for his involvement in this "sting" case is that he lived and worked with the target, Monzer Al Kassar. In view of these circumstances and the exponential increase in what is already a draconian 25 year mandatory minimum sentence for this first offender, we respectfully ask the Court to reject the "Terrorism" enhancement.

We also wish to make the Court aware that a Section 3A1.4 "Terrorism" enhancement would have a tremendous negative impact on Mr. Moreno Godoy's custody level. It has the potential of

changing his designation from a medium to maximum security facility. It would also impact the conditions of confinement in whatever facility he is ultimately designated to. This would include extra monitoring, restrictions on telephone use and mail privileges, and whether or not he will be permitted "contact" visits with his family. In view of all these circumstances, we urge the Court to reject the "Terrorism" enhancement of Section 3A1.4. [2]

### *The Missile Enhancement: Section 2K2.1(b)(3)(A)*

Section 2K2.1(b)(3)(A) provides for an enhancement of 15 levels where the offense involves "a destructive device that is...a missile...." One of the myriad ways in which the guideline range climbed to such stratospheric heights was that the PSR, on Page 23, para. 97, added 15 levels pursuant to this provision. The offense of conviction, however, is Conspiracy to Acquire and Use Anti-Aircraft Missiles in violation of Section 2332g of Title 18. That statute fully considers the dangerousness involved, which is why it includes a mandatory minimum sentence of 25 years in prison. Thus, applying the "missile" enhancement to this "missile" count constitutes impermissible "double counting" because it greatly enhances the sentence for a factor which is present in every conviction under the statute. See United States v. Salim, 549 F.3d 67, 76 (2d Cir. 2008); see also United States v. Napoli, 179 F.3d 1, 12, fn. 9 (2d Cir. 1999). It is akin to imposing a guidelines "firearm" enhancement in a conviction under a "firearm" statute. Accordingly, this Court should reject a "missile"enhancement.

---

[2] We also respectfully request that the Court indicate on the Judgment and Commitment Order that Mr. Moreno Godoy does not represent a threat to the national security.

### *The Firearm Enhancements: Sections 2K2.1(b)(1)(E),(5),(6)*

The PSR has recommended no fewer than 3 separate enhancements for trafficking and transfer of "firearms," resulting in an additional 18 offense levels. PSR at p. 23, paras. 96, 98, 99. These enhancements should not apply because the count upon which the guidelines offense level is calculated involves "missiles," rather than ordinary "firearms." This "missile"count, Count 3, carries its own severe penalty; a 25 year mandatory minimum prison term. Adding these additional 3 enhancements and 18 offense levels smacks of the very same "piling on" that this Court decried in United States v. Adelson, 441 F.Supp.2d at 510.

### *Role in the Offense Adjustment: Section 3B1.2(a)*

Felipe Moreno Godoy came very late to this conspiracy and played what was quite clearly a lesser role. He shuttled the informants to and from airports, train stations and hotels; helped facilitate the transfer of funds, including traveling to Romania for this purpose; and served as an intermediary for messages between the informants and his friend and employer, Monzer Al Kassar. Nevertheless, the PSR has rejected a downward adjustment for his being a "minimal participant." PSR at p. 33.

Incongruously, that very same PSR includes the following:

> "The Probation Office acknowledges that the defendant did not play as integral a role in this case as did his employer and codefendant, Monzer Al Kassar. That being said, the defendant's conviction on Count 3 subjects him to the same 25 year mandatory minimum term of imprisonment faced by Al Kassar. While we believe that the defendant was less culpable than Al Kassar, the only manner in which that difference could be demonstrated would be to recommend a total sentence greater than 25 years in prison for Monzer Al Kassar. The Probation

> Office believes that a sentence greater than 25 years in prison
> for Al Kassar would, in fact, be greater than necessary to
> address the sentencing objectives in this case."

PSR at pp. 37-38. We disagree.

Increasing Monzer Al Kassar's already draconian sentence is not "the only manner" in which Felipe Moreno Godoy's lesser role can be acknowledged. The Court can adjust his offense level downward pursuant to Section 3B1.2(a), based on his "minimal participation." See United States v. Castano, 234 F.3d 111 (2d Cir. 2000). Such an adjustment is particularly appropriate in light of the PSR's recommendation of a 25 year sentence. A reduction from the PSR's offense level of 66 is clearly required in order to accomplish this. The instant adjustment is more than warranted under the circumstances of this case.

By recommending a 25 year sentence in the face of a guidelines calculation of Level 66, the PSR acknowledges that this literally "off the charts" offense level is way off the mark and a downward departure is appropriate. This Court has taken note of:

> "...the utter travesty of justice that sometimes results from the
> guidelines' fetish with abstract arithmetic, as well as the harm
> that guideline calculations can visit on human beings if not
> cabined by common sense."

United States v. Adelson, 441 F.Supp.2d at 512. We respectfully request that this Court block the guidelines from making a further "travesty of justice" with regard to the sentence Felipe Moreno Godoy must serve for his conviction in this case..

The Factors Under Section 3553

This Court is surely familiar the march of cases from United States v. Booker, 543 U.S. 220

(2005) to <u>Gall v. United States</u>, __ U.S. __, 128 S.Ct. 586 (2007) and <u>Kimbrough v. United States</u>, __ U.S. __, 128 S.Ct. 558 (2007)  So, we will cut right to the chase. The Second Circuit recently held in an *en banc* decision:

> "It is now, however, emphatically clear that the Guidelines are guidelines - that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District judges are, as a result, generally free to impose sentences outside the recommended range."

<u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008)(*en banc*).

The sentencing factors which a court must consider are contained in Section 3553(a). These include: "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to reflect the seriousness of the offense, provide adequate deterrence and protect the public. 18 U.S.C. Section 3553(a); <u>see</u> <u>Gall v. United States</u>, 128 S.Ct. at 596.

### *History and Characteristics of the Defendant*

Luis Felipe Moreno Godoy is a member of a politically prominent Chilean family. His parents divorced when was only two years old at which point he lived with his mother and his grandparents. His grandfather, Domingo Godoy Perez was the President of the Chilean Supreme Court. His uncle, Domingo Godoy Matte, and his cousins are prominent politicians. PSR at pp. 24-25, paras. 113-115. Mr. Godoy holds a Masters Degree in Agricultural Economics. PSR at p. 27, para. 128. He worked in a variety of businesses and approximately ten years ago decided to relocate to Marbella, Spain, to live a quiet life in the employ of his dear friend, Monzer Al Kassar.

He is separated from his wife, Paula Ramirez, a military physician who counted among her patients General Augusto Pinochet, the former leader of Chile. PSR at p. 25, para. 116. The couple have three children and two grandchildren. All are well educated and gainfully employed. His son, Luis Felipe Moreno Ramirez, 31, has a Ph.D in philosophy and teaches at a university. His eldest daughter, Maria Paz Moreno Ramirez, 28, has a Masters Degree and teaches Spanish. The youngest, Maria Jesus Moreno Ramirez, 24, is a college graduate and graphic designer. His two daughters traveled from Chile to attend their father's trial and demonstrate their support for him. Their letters have been appended to the PSR.

His youngest daughter, Maria Jesus Moreno Ramirez, wrote:

> "My father is a good person. He likes to eat, watch tv, read the newspapers, to navegate [sic] the internet. He was at that time enjoying simple things of life. I'm really sure he doesn't want to hurt anyone, I'm really sure, because he is not a bad intention person. He got in this huge problem, but he never look for it. He was living his normal life, when those people appeared in his life. I went to Spain in December of 2006 and stayed there until march of 2007. I was in the university at that time, in my summer holidays, I needed to work in something related to design in order to pass a course. That's why my father got for me a job in a magazine. I went in the mornings there and in the afternoon I spent all the time with my dad. We were very peaceful, we watch a lot of movies, went to the beach. I never imagine what will happen later on that year, he was arrested in June of 2007.
>
> My father gave me a lot of security, he made me feel very loved and needed. When someone believes you are an extraordinary person, you start believing that. And that gave me a lot of strength and security in myself. He likes the way I am, he is proud, he trust me and that's the best for me. We are very close. I miss him. There are a lot of things that I admire of him, I admire his strenght [sic] and simpathy [sic], his humility, effort and generosity,

he teached [sic] me a lot of things."

Letter of Maria Jesus Moreno Ramirez at p. 2.

Her sister, Maria Paz Moreno Ramirez, wrote:

> "My father meet my son when we visit him in Spain. It was a nice trip and we spend all the time together, everyday sharing our things. We used to go walking or watching movies or just been [sic] together talking and sharing our lives. In spite of the fact that we do not see our father very often, my sister and I are very near to him. We call each other in a constantly [sic] way and we write letters all the time. We really have a good relation with our father. We try to visit him as much as we can, but for reasons of money or work we cannot do it all the time we wish to....
>
> My dad is a good person who has lived through difficult moments and solitarily. He is a calm and healthy man, without addictions or vices. He is a generous man, of good feelings that always worries for his neighbors and the people that need help."

Letter of Maria Paz Moreno Ramirez at p. 2.

Felipe Moreno Godoy has led an exemplary life. He has many fine qualities. We hope the Court will consider them fully in assessing an appropriate sentence.

### *Nature and Circumstances of the Offense*

The section of the PSR which addresses the nature and circumstances of the offense begins on Page 7, para. 23. Yet, it is only on page 13, para. 48, that Felipe Moreno Godoy enters the picture. His participation begins with the March 26-29, 2007 meetings at Monzer Al Kassar's Marbella home, where Mr. Moreno Godoy also resided. As his daughter Maria Jesus wrote: "Mr. Al Kassar liked to invite people to his house, so my dad was kind of hostest [sic]. He will pick them

[sic] in the airport, and give them good hospitality." Letter of Maria Jesus Moreno Ramirez at p. 2. That "hospitality" may have ripened into participation in the conspiracy, but it cannot seriously be contended that Felipe Moreno Godoy's participation was integral to the success of the venture. He played a very small role. And lest it be forgotten, this was a "sting" operation targeting Monzer Al Kassar. Felipe Moreno Godoy was the proverbial small fish caught in the large net. There was never a chance that anyone would be harmed in any way. Surely, the nature of this defendant's participation does not cry out for punishment more severe than the mandatory minimum sentence which must be imposed by the Court.

### *Deterrence and Protection of the Public*

The mandatory minimum sentence of 25 years' incarceration for this 60 year old first offender insures both deterrence and protection of the public. While a far lesser sentence would also fulfill these objectives, we understand that there are no alternatives available to the Court.

### Defendant's Proposals to Ameliorate the Effects of the Mandatory 25 Year Sentence

While there are no alternatives to the 25 year sentence the Court must impose, there are various options available to the Court to ameliorate the effects of that sentence. We hope the Court will consider them. According to actuarial tables, this 60 year-old defendant is likely to die in prison. And yet, he did not kill, hurt, or harm anyone by his participation in this "sting" case. But for the statutory mandatory minimum, he would likely receive a considerably lesser sentence. Indeed, a lesser sentence would be far more commensurate with his background and participation in the offense. For these reasons we hope the Court will agree to a non-Guidelines sentence and

adopt the following recommendations.

First, the PSR has calculated a Total Offense Level of 43 in Criminal History Category VI. It recommends "25 years on Counts 1,2,and 3, 15 years on Count 4, and 20 years on Count 5, with all terms to run concurrently." PSR at p. 36. We recommend that the Court impose the mandatory minimum sentence of 25 years *only on Count 3*. We further recommend that the Court impose 60 month sentences on the remaining counts. This would send a strong signal to the Bureau of Prisons emphasizing that the Court is imposing the 25 year sentence only because the statute compels it to do so, and that it would otherwise impose a far lesser sentence in light of the Section 3553(a) factors.

Second, because it will have severe consequences for the conditions of confinement and custody level of the prison to which he will be designated by the Bureau of Prisons, and for the reasons discussed earlier at pp. 5-6, we respectfully request that this Court reject a Section 3A1.4 "Terrorism" enhancement. Rejecting that enhancement will avert the negative consequences which follow those labeled as "terrorists" as they travel through the world of the Bureau of Prisons. In this regard we also respectfully request that this Court indicate on the Judgement and Commitment that Luis Felipe Moreno Godoy does not present a threat to our national security.

Finally, we ask this Court to recommend to the Bureau of Prisons that Mr. Moreno Godoy serve his sentence at Coleman, Florida. The federal facilities at Coleman, Florida include every custody level from low to high, so that there will be an appropriate facility no matter what his ultimate security classification. It cannot be forgotten that Mr. Moreno Godoy must serve his lengthy sentence in what is for him a foreign country. This represents not only an extreme hardship for him, but for his entire family as well. Along this line, his daughter Maria Jesus has written to the Court:

> "Please try to put him in Miami, because from Santiago almost

every flight goes there. It's the cheapest and the easiest way.
Don't do it for him, do it for a 24 year old daughter."

Letter of Maria Jesus Moreno Ramirez at p. 3. It will be difficult enough for them to visit him in Florida, but at least he can have access to the comfort and support of his loving family. For these reasons, we hope the Court will seriously consider recommending to the Bureau of Prisons a designation to Coleman, Florida.

## CONCLUSION

**FOR THE FOREGOING REASONS WE RESPECTFULLY REQUEST THAT THIS COURT ADOPT DEFENSE COUNSEL'S SENTENCING RECOMMENDATIONS**

Respectfully submitted,

GALLET, DREYER & BERKEY, LLP
By: _____
Roger L. Stavis (7666)
*Attorneys for Defendant Moreno Godoy*
845 Third Avenue
New York, New York 10022
(212) 935-3131